[No. H024354. Sixth Dist. Feb. 21, 2003.]

In re JOSE P., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
JOSE P., Defendant and Appellant.

## COUNSEL

Peter A. Estern, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Moona Nandi and Allan Yannow, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**PREMO, J.—**

### INTRODUCTION

The juvenile court found that Jose P. (the minor) had committed home invasion robbery, false imprisonment, and first degree burglary. The court found true the allegation that he had committed these crimes for the benefit of, at the direction of, or in association with a criminal street gang. (Pen. Code, § 186.22, subd. (b)(1) (hereafter section 186.22(b)(1)).)[1] The court also found that the minor had committed the substantive offense of active participation in a criminal street gang. (§ 186.22, subd. (a) (hereafter section 186.22(a)).) The court committed the minor to the California Youth Authority. The maximum period of confinement included nine years for the robbery increased by 10 years for the gang enhancement. In addition, the court assessed eight months for the substantive gang crime.

On appeal, the minor contends that there is insufficient evidence to support either the gang enhancement or the gang crime and that section 654 prohibits imposition of punishment for the latter. We shall affirm.

---

[1] Hereafter, all undesignated statutory references are to the Penal Code.

## FACTS

### *Evidence of the Robbery*

On October 5, 2001, a witness observed two men enter a residence in Salinas carrying a wheeled dolly. A third person, who was wearing a Nike baseball cap, stationed himself across the street. Shortly afterward, the first two men left the house pushing the dolly, which now bore a heavy object wrapped up in a sheet or a blanket. The witness believed the object might have been a washing machine. In fact, the dolly bore two safes containing about $17,000 in cash, payroll checks, and jewelry.

Twelve-year-old J.B. and her seven-year-old brother, D.G., lived in that house in Salinas. On the night of the robbery, D.G. was watching television and J.B. was taking a bath. Their parents were not home. The two robbers came in and pointed what D.G. thought was a gun at D.G.'s head. Someone put duct tape over his eyes and mouth and also bound his hands and feet with the tape. D.G. positively identified the minor from a photographic lineup as the person who pointed the gun at him. He referred to the minor as "Ruben," J.B.'s ex-boyfriend.[2]

The officers investigating the crime found a bed sheet on the ground across the street from the minor's house. When they searched his house they found a roll of duct tape, a .380-caliber bullet in a dish in the living room, and a dolly in the rafters of the garage. Neither the safes nor their contents were recovered.

### *Evidence of Gang Participation*

Three nights before the robbery, J.B. stayed out all night. Her mother became concerned and looked through her things. She found J.B.'s diary and read it. J.B. had written about her relationship with the minor and made numerous notations referring to the Norteños.

Officers searching the minor's residence after the robbery found two photographs. Each photograph depicted two Hispanic males, one or both of whom were flashing gang signs.

Salinas Police Detective Fay Patterson interviewed the minor at the police station a little over a month after the robbery. The minor told Detective Patterson that he was associated with the Norteño gang. He said that J.B.

---

[2]J.B. did not testify because her parents sent her to live with relatives out of state very shortly after the robbery.

was his girlfriend and because her parents did not have a high opinion of gang members he used the name "Ruben" when he called her home so that her parents would not know who he was. In addition to admitting his association with the gang, the minor told the detective that if the gang was to "do something," he would not "be a chicken," which the detective took to mean that he would do whatever the gang was doing at the time.

About a month after the robbery, shortly after J.B.'s family had received subpoenas requiring their testimony in this case, J.B.'s mother found a note on her doorstep. The note contained a reference to Norteño and threatened her husband. The note caused the family to be reluctant to testify.

Officer Vickie Burnett of the Salinas Police Department testified as an expert on criminal street gangs. Officer Burnett explained that the "Norteño" street gang is an ongoing organization having around 600 members or associates in Salinas. She explained that there were separate cliques or factions within the larger Norteño gang. The Santa Rita and Salinas East Market Street (SEM) gangs were such subgroups and were loyal to one another and to the larger Norteño street gang. She said that all the Norteño gangs follow the same bylaws as the Norteño prison gangs. The primary activities of the gangs are those listed in section 186.22, subdivision (e). Norteños identified with the color red and the number 14.

Officer Burnett went on to describe criminal activity of Norteño gang members. She testified about two recent cases. In the first, two members of SEM were arrested. One was convicted of discharging a firearm at an inhabited dwelling (§ 246) and the other of being a felon in possession of a firearm (§ 12021). Both convictions included the gang enhancement of section 186.22(b)(1). In the second case, one of the defendants was identified as a Norteño gang member. The other admitted to being a member of the Kilbreth Street Norteño gang. These defendants were arrested in connection with a robbery at a convenience store. Both were convicted of robbery with gang enhancements. (§ 211, 186.22(b)(1).)

Officer Burnett recounted the following series of contacts that had taken place between the minor and members of the Salinas Police Department:

On November 17, 2001, the minor was contacted in the company of an admitted Norteño.

On September 2, 2001, the minor, who was wearing a red shirt and red pants, was contacted in the company of a Santa Rita gang associate.

On June 8, 2001, the minor was contacted as a witness in the attempted murder of his brother, a Santa Rita gang associate. At the time, he was in the

company of another admitted Norteño. The minor admitted at that time that he associated with Santa Rita gang members.

On April 19, 2001, the minor was arrested for attempted robbery and resisting arrest.

On March 29, 2001, the minor was again contacted in the company of his brother who is associated with the Santa Rita gang. The minor was wearing a red shirt.

On August 3, 2000, the minor was contacted in the company of another brother who is an SEM gang member. Officer Burnett pointed out that in one of the photographs found at the minor's home the word "Semsters" appeared, which was a word used for the SEM gang.

On December 3, 1999, the minor was arrested along with his brother, the Santa Rita gang associate, in connection with a stolen vehicle.

The minor's high school records revealed that in November 1999 he was suspended for breaking school rules and was put on a "gang contract" by which he agreed not to wear red or to associate with "other known members of the Norteño gang." On May 17, 2000, he was involved in a fight on school grounds. During the fight the minor used the word "Norteños." According to Officer Burnett, a gang member will yell out "Norteños" to advertise that a Norteño is doing the crime. The minor was expelled from the school district as a result of this fight.

Officer Burnett testified that it was her opinion that the minor "is an active participant in a criminal street gang, because he has admitted to associating with Norteños, Norteño street gang members. He wears gang-related clothing and colors, and he has been arrested for participating in gang-related crimes." She also opined that the robbery of which the minor was then accused was committed in association with "the Norteño criminal street gang" because the minor associates with persons he knows to be Norteño street gang members, he admitted that if they asked him to do something he would probably do it, the robbery lookout was wearing a Nike baseball cap (the letter "N" in Nike also stands for Norteño), and an intimidating note was left with J.B.'s family, which Officer Burnett explained was a common gang tactic.

## Procedural Background

The instant matter was conducted in response to a petition filed under Welfare and Institutions Code section 602. The petition contained allegations of seven substantive offenses and a variety of enhancements relating to the October 5, 2001 incident.[3] Count 1 alleged robbery in the presence of D.G. and under circumstances commonly referred to as home invasion robbery. (§§ 211, 213, subd. (a)(1)(A).) Count 4 alleged false imprisonment of D.G. (§ 236.) Count 6 alleged first degree burglary. (§ 459.) Each of these three felony counts also included the gang enhancement allegation of section 186.22(b)(1). Count 7 alleged the substantive offense of active participation in a criminal street gang. (§ 186.22(a).) The petition further alleged that the minor had committed attempted robbery (§§ 664, 211) in April 2001 for which a previous petition had been sustained. The juvenile court found each of these allegations to be true and sustained the petition on that basis. The court rejected the other allegations, all of which concerned the use of firearms or listed J.B. as a victim.

## Issues

1. Is the evidence sufficient to support the juvenile court's finding that the minor is an active participant in a criminal street gang and that he committed the crimes with which he was charged for the benefit of a criminal street gang?

2. Does section 654 apply to stay the eight-month sentence for violation of section 186.22(a)?

## Discussion

### Sufficiency of the Evidence of Gang Involvement

The minor contends that there was insufficient evidence to establish that he was associated with any particular gang and therefore the prosecution did not carry its burden of proving the facts necessary to support either the substantive gang offense (§ 186.22(a)) or the gang enhancement. (§ 186.22(b)(1).)

When the challenge is to the sufficiency of the evidence, " '[t]he test on appeal is whether substantial evidence supports the conclusion of the trier

---

[3]A second petition relating to the minor's arrest on November 17, 2001, for driving without a license and possessing marijuana (Veh. Code, § 12500, subd. (a); Health & Saf. Code, § 11357, subd. (b)) was adjudicated simultaneously.

of fact, not whether the evidence proves guilt beyond a reasonable doubt.' " (*People v. Johnson* (1980) 26 Cal.3d 557, 576 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255] quoting *People v. Reilly* (1970) 3 Cal.3d 421, 425 [90 Cal.Rptr. 417, 475 P.2d 649].) We view the evidence in the entire record in the light most favorable to the respondent and we presume the existence of every fact in support of the judgment that the trier could reasonably deduce from the evidence. (*People v. Johnson, supra,* 26 Cal.3d at pp. 576-577.) To be substantial, the evidence must be " 'of ponderable legal significance . . . reasonable in nature, credible, and of solid value.' " (*Id.* at p. 576.)

Section 186.22(a) creates a substantive crime: "Any person who actively participates in any criminal street gang with knowledge that its members engage in or have engaged in a pattern of criminal gang activity, and who willfully promotes, furthers, or assists in any felonious criminal conduct by members of that gang, shall be punished [as specified]." A person need not be a gang member to be guilty of violating section 186.22(a). (See *People v. Valdez* (1997) 58 Cal.App.4th 494, 505 [68 Cal.Rptr.2d 135] (*Valdez*).) But he or she must have had more than a nominal or passive involvement with the gang, knowing of the gang's pattern of criminal activity, and must have aided and abetted a separate felony committed by gang members. (*People v. Castenada* (2000) 23 Cal.4th 743, 749-750 [97 Cal.Rptr.2d 906, 3 P.3d 278].)

Section 186.22(b)(1) is a sentence enhancement: "Except as provided in paragraphs (4) and (5), any person who is convicted of a felony committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members, shall, upon conviction of that felony, in addition and consecutive to the punishment prescribed for the felony or attempted felony of which he or she has been convicted" shall receive additional punishment as specified.

The existence of a criminal street gang is unquestionably an element of both the enhancement and the substantive offense. (*Salazar v. Superior Court* (2000) 83 Cal.App.4th 840, 846 [100 Cal.Rptr.2d 120] (*Salazar*).) To prove the existence of a criminal street gang, "the prosecution must prove that the gang (1) is an ongoing association of three or more persons with a common name or common identifying sign or symbol; (2) has as one of its primary activities the commission of one or more of the criminal acts enumerated in the statute; and (3) includes members who either individually or collectively have engaged in a 'pattern of criminal gang activity' by committing, attempting to commit, or soliciting *two or more* of the enumerated offenses

(the so-called 'predicate offenses') during the statutorily defined period. [Citation.]" (*People v. Gardeley* (1996) 14 Cal.4th 605, 617 [59 Cal.Rptr.2d 356, 927 P.2d 713].)

 The minor cites this court's opinion in *Valdez* for the proposition that the evidence of gang activity must be specific to a particular local street gang, not to the larger Norteño organization. In *Valdez*, one issue before us was whether the court erred in permitting expert testimony concerning whether the defendant's conduct was committed for the benefit of a criminal street gang. In that case, a group of individuals from a number of different Norteño cliques or gangs in San Jose came together one day and formed a caravan to attack Sureños. Given the expert testimony, we stated, "At the time it assembled, the caravan was not a 'criminal street gang' within the meaning of the [gang] enhancement allegation. Moreover, their common identification as Norteños did not establish them as a street gang, for, as [the expert] testified, Norteño and Sureño are not the names of gangs." (*Valdez*, *supra*, 58 Cal.App.4th at p. 508.) We concluded that the expert testimony was admissible because it could help the jury understand that joint conduct by such a diverse group could benefit each of the gangs. (*Id.* at pp. 508-509.) *Valdez* does not hold that there is no criminal street gang called Norteño. Moreover, the expert testimony in *Valdez* was evidence in that case, not this one. It is irrelevant to our determination of whether there is substantial evidence to support the gang findings here.

The minor also cites our opinion in *Salazar*. In that case, we concluded that the preliminary hearing produced "a total absence of evidence demonstrating the existence of a criminal street gang." (*Salazar*, *supra*, 83 Cal.App.4th at p. 846.) Although during the incident, the words "Vagos" and "SEM" had been uttered, we found that this, at most, implied that there were groups known as "Vagos" or "SEM" but that there was no evidence to connect the defendant in that case to any such group or that either group engaged in a pattern of criminal gang activity. (*Ibid.*) In contrast, the prosecution's expert in this case testified to both the existence of a criminal street gang and the minor's participation in it.

Officer Burnett testified that the Norteño gang was an ongoing association of around 600 persons, identified by the color red and the number 14, and that it had as one of its primary activities the commission of the criminal acts listed in section 186.22. She detailed the gang's pattern of criminal activity by describing the firearms offenses and the convenience store robbery. This is sufficient evidence to establish that Norteño was a criminal street gang.

There is also substantial evidence to support a finding that the minor was an active participant in the Norteño criminal street gang. (§ 186.22(a).)

Significantly, he admitted to Officer Patterson that he associated with the Norteño gang. Police records also indicated that he had admitted to associating with the Santa Rita gang, a Norteño subgroup. The minor had been contacted on several occasions in the company of persons who were members of the Norteños, SEM, and Santa Rita gangs and was observed wearing red on at least two occasions. The minor said that if his fellow gang members had asked him to do something, he would not be a chicken. And finally, he had previously been involved in the crimes of car theft and attempted robbery as well as the home invasion robbery he committed on October 5, 2001.

As to the enhancement, there was the evidence that the robbery lookout was wearing a Nike baseball cap, J.B. had written in her diary about the minor along with repeated references to Norteño, and her family received a note from the Norteños attempting to dissuade their testimony in this case. This evidence, coupled with the evidence of the minor's ongoing involvement with the Norteño gang and his prior arrests for gang-related crimes, is sufficient to support a finding that the robbery was committed for the benefit of, or in association with, the Norteño gang and that the minor had the specific intent to promote, further, or assist in the gang's criminal conduct. (§ 186.22(b)(1).)

*Section 654*

In committing the minor to the Youth Authority, the juvenile court included in the maximum period of confinement nine years for the home invasion robbery (§§ 211, 213) enhanced by 10 years pursuant to section 186.22(b)(1)(C). The court also included eight months for the gang crime. (§ 186.22(a).) The minor challenges the eight months for the gang crime, contending that time should be stayed pursuant to section 654.[4]

"Section 654 is intended to ensure that punishment is commensurate with a defendant's criminal culpability. (*People v. Perez* (1979) 23 Cal.3d 545, 551 [153 Cal.Rptr. 40, 591 P.2d 63]; accord, *People v. Latimer* (1993) 5 Cal.4th 1203, 1211 [23 Cal.Rptr.2d 144, 858 P.2d 611].) It expressly prohibits multiple sentences where a single act violates more than one statute. For example, a defendant may be guilty of both arson and attempted murder for throwing gasoline into an inhabited room and lighting it, but the single act may be punished only once. (See, e.g., *Neal v. State of California*

---

[4]Section 654 states, in pertinent part: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision."

(1960) 55 Cal.2d 11, 19 [9 Cal.Rptr. 607, 357 P.2d 839].)" (*People v. Alvarado* (2001) 87 Cal.App.4th 178, 196 [104 Cal.Rptr.2d 624].) "Although the distinct crimes may be charged in separate counts and may result in multiple verdicts of guilt, the trial court may impose sentence for only one offense—the one carrying the highest punishment. [Citation.]" (*People v. Liu* (1996) 46 Cal.App.4th 1119, 1135 [54 Cal.Rptr.2d 578].)

Section 654 also prohibits multiple punishment if the defendant commits more than one act in violation of different statutes when the acts comprise an indivisible course of conduct having a single intent and objective. "If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one." (*Neal v. State of California, supra,* 55 Cal.2d at p. 19.) In such a case, the defendant's single intent and objective are treated as a single act. For example, a defendant who enters a building with the intent to commit theft and then takes something of value cannot be sentenced for both burglary and theft. Although the defendant committed two criminal acts (entering the building and taking the property), the two acts "were parts of a continuous course of conduct and were motivated by one objective, theft; the burglary, although complete before the theft was committed, was incident to and a means of perpetrating the theft." (*People v. McFarland* (1962) 58 Cal.2d 748, 762 [26 Cal.Rptr. 473, 376 P.2d 449].)

On the other hand, section 654 does not apply when the evidence discloses that a defendant entertained multiple criminal objectives independent of each other. In that case, "the trial court may impose punishment for independent violations committed in pursuit of each objective even though the violations shared common acts or were parts of an otherwise indivisible course of conduct. [Citations.] The principal inquiry in each case is whether the defendant's criminal intent and objective were single or multiple." (*People v. Liu, supra,* 46 Cal.App.4th at p. 1135.) "A defendant's criminal objective is 'determined from all the circumstances and is primarily a question of fact for the trial court, whose findings will be upheld on appeal if there is any substantial evidence to support it.' (*People* v. *Porter* (1987) 194 Cal.App.3d 34, 38 [239 Cal.Rptr. 269].)" (*People v. Braz* (1997) 57 Cal.App.4th 1, 10 [66 Cal.Rptr.2d 553].)

 Participation in felonious conduct in association with, or for the benefit of a gang is one of the elements necessary to prove the substantive gang crime described by section 186.22(a). That is, "section 186.22(a) limits liability to those who promote, further, or assist a specific felony committed by gang members and who know of the gang's pattern of criminal gang activity. Thus, a person who violates section 186.22(a) has also aided and

abetted a separate felony offense committed by gang members . . . ." (*People v. Castenada, supra*, 23 Cal.4th at p. 749.) Presuming that the juvenile court relied upon the instant robbery as the basis for section 186.22(a) liability, the minor contends that punishment for the section 186.22(a) offense and the robbery is double punishment for robbery. The minor also suggests that his objective and intent as to both crimes had to be the same because the gang enhancement that was applied to the robbery required a finding of specific intent to further the gang's criminal conduct.[5]

We note first that the instant robbery was not the only felonious act upon which the court could have based its finding that the minor had committed the section 186.22(a) crime. The minor had also been found guilty of attempted robbery in April 2001. Given his continuous involvement with the Norteños this crime could have served as the basis for the court's finding that he violated section 186.22(a). In that case, the home invasion robbery and the substantive gang crime would have no acts in common. However, even presuming that the robbery was the basis for the minor's section 186.22(a) liability, section 654 does not require that punishment for that crime be stayed.

A similar situation was confronted by the appellate court in *People v. Herrera* (1999) 70 Cal.App.4th 1456 [83 Cal.Rptr.2d 307] (*Herrera*). In *Herrera*, the jury found the defendant guilty of attempted murder and found the gang enhancement allegation to be true. (§ 186.22(b)(1).) The jury also found the defendant guilty of the gang crime of section 186.22(a). The trial court imposed sentence for attempted murder, enhanced pursuant to section 186.22(b)(1), and also imposed a sentence for the section 186.22(a) gang crime. (*Herrera, supra*, 70 Cal.App.4th at p. 1462.)

The appellate court struck the enhancement because it does not apply where the crime is punishable by life in prison. (*Herrera, supra*, 70 Cal.App.4th at p. 1465; § 186.22, subd. (b)(4).) However, as to the defendant's argument that section 654 prohibited punishment for both the attempted murder and the section 186.22(a) offense, the court held that the defendant's objective in committing the two crimes was divisible, even taking into account the fact that the jury had found the attempted murder was committed for the benefit of the gang. The appellate court stated: "Section 186.22, subdivision (a) punishes active gang participation where the defendant promotes or assists in felonious conduct by the gang. It is a substantive

---

[5]As the minor points out, it is undecided whether the rule of section 654 applies to sentence enhancements in the same way it applies to substantive offenses. (See *People v. Arndt* (1999) 76 Cal.App.4th 387, 394-395 [90 Cal.Rptr.2d 415] and cases cited therein.) In light of our conclusion that on the facts of this case section 654 would not limit the punishment imposed for the gang crime, it is unnecessary for us to reach that issue.

offense whose gravamen is the *participation in the gang itself.* Hence, under section 186.22, subdivision (a) the defendant must necessarily have the intent and objective to actively participate in a criminal street gang. . . . [S]ection 186.22, subdivision (a) requires a separate intent and objective from the underlying felony committed on behalf of the gang. The perpetrator of the underlying crime may thus possess 'two independent, even if simultaneous, objectives[,]' thereby precluding application of section 654. [Citation.]" (*Herrera, supra,* 70 Cal.App.4th at pp. 1467-1468, fns. omitted.)

This case is no different than *Herrera.* The minor's intent and objective in violating section 186.22(a) necessarily must have been participation in the gang itself. Evidence of that intent was abundant. The minor had been actively involved in gangs since at least 1999. He was arrested along with a gang member for car theft. He was expelled from school for a gang fight. His brothers were gang members. Even if his criminal liability for the gang offense depended upon his participation in the robbery, the record supports a finding that he harbored the separate intent and objective to *participate in the gang.*

His intent and objective in committing the robbery was to take the property located in the home. Application of the enhancement does not alter the fact that he must also have had the intent to take the property. While he may have pursued the two objectives simultaneously, the objectives were nevertheless independent of each other. Therefore, section 654 does not bar punishment for both the gang crime and the robbery.

## DISPOSITION

The judgment is affirmed.

Rushing, P. J., and Elia, J., concurred.

Appellant's petition for review by the Supreme Court was denied April 30, 2003. Kennard, J., and Werdegar, J., were of the opinion that the petition should be granted.