[No. F052218. Fifth Dist. Oct. 22, 2008.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL ALAN WILLIAMS, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of the Facts and parts I, IIA., IIB., IID., IIE., and IIF. of the Discussion.

984

**COUNSEL**

Sharon Giannetta Wrubel, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Kathleen A. McKenna and Lloyd G. Carter, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**ARDAIZ, P. J.**—On the evening of March 1, 2004, Rose Johnston was stabbed to death because she ostensibly caused a conflict between two members of a group of young men calling themselves the Small Town Peckerwoods. Her body was then placed inside her car and burned beyond recognition. As a result of these events, appellant Michael Alan Williams now stands convicted, following a jury trial, of murder involving the personal use of a deadly weapon and committed by an active participant in a criminal street gang to further the activities of that gang (Pen. Code,[1] §§ 187, subd. (a), 190.2, subd. (a)(22), 12022, subd. (b)(1); count 1) and active participation in a criminal street gang (§ 186.22, subd. (a); count 2).[2] His motion for a new trial was denied, and he was sentenced to life in prison without the possibility of parole plus one year.

In the published portion of this opinion, we will address the relationship that must exist before a smaller group can be considered part of a larger group for purposes of determining whether the smaller group constitutes a criminal street gang. In the unpublished portion, we will reject appellant's various claims of error affecting the murder conviction. We will also reject his claims of evidentiary insufficiency with respect to the special circumstance finding and conviction on count 2. Because we conclude the evidence was sufficient to establish the Small Town Peckerwoods were a criminal street gang, but we cannot determine whether jurors based their determination in this regard solely on evidence concerning that group or also erroneously considered evidence related to some larger Peckerwood organization, however, we will reverse the special circumstance finding on count 1 and the conviction on count 2.

### FACTS*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

[1] All statutory references are to the Penal Code unless otherwise stated.

[2] Raymond Allen Elisarraras was jointly charged with appellant. Prior to trial, he committed suicide in jail.

*See footnote, *ante*, page 983.

## DISCUSSION[14]

## I

### NON-GANG-RELATED ISSUES[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## II

### GANG-RELATED ISSUES

Appellant challenges the sufficiency of the evidence to support the jury's findings on the gang-activity special circumstance and count 2. As to both, he contends there was insufficient evidence of the primary activities element that had to be proven in order to establish the Small Town Peckerwoods (STP) constituted a criminal street gang, and that appellant knew the group engaged in a pattern of criminal gang activity. As to the special circumstance, he further contends the evidence was insufficient to show Rose Johnston was killed to further the activities of a criminal street gang.[24]

---

[14] For organizational purposes, we have divided appellant's claims into what might roughly be termed gang-related and non-gang-related issues.

[*] See footnote, *ante*, page 983.

[24] Appellant raises several additional gang-related issues. In light of our conclusion that the special circumstance allegation and count 2 must be reversed, we do not address them, with the exception of his claim the entire judgment must be reversed because the trial court permitted the gang expert, Agent Dilbeck, to equate groups of Peckerwoods with al Qaeda cells. In describing the Peckerwoods' organizational structure, Dilbeck testified that Peckerwood groups are divided into what are referred to as cells and explained: "You could have Al-Qaeda cells that have the same ideology from one cell to the other, but they may not have any personal knowledge of what the end goal of that individual group is. It would be the same as a Peckerwood cell. They have common ideologies with a smaller cell of the Peckerwoods in Madera, and may have—may not know what another cell of Peckerwoods in Madera is doing. But they're—they have the same type of ideology."

We have examined the testimony in context and conclude the trial court did not err in admitting it, as Dilbeck did not suggest the Small Town Peckerwoods were a group like al Qaeda or that appellant belonged to an organization that was akin to a terrorist group in its conduct, but simply that the groups were similarly structured. Moreover, were we to find error, we would conclude it should not be reviewed under the harmless-beyond-a-reasonable-doubt standard of *Chapman v. California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 87 S.Ct. 824], since, there being permissible inferences the jury could draw from the evidence, its admission did not constitute a violation of due process. (*People v. Albarran* (2007) 149 Cal.App.4th 214, 229–230 [57 Cal.Rptr.3d 92]; accord, *McKinney v. Rees* (9th Cir. 1993) 993 F.2d 1378, 1384.) Instead, any error should be reviewed under the state law test of *People v. Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243]. Utilizing that standard, and considering the manner in which the al Qaeda analogy was used and the other example Dilbeck gave (different branches of the military), we find no reasonable probability the references to al Qaeda prejudiced appellant.

A., B.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## C. *The Relevant Group*

As an initial matter, we must address appellant's argument that the group relevant to our determination is the Small Town Peckerwoods, not other groups calling themselves Peckerwoods or some overall Peckerwoods gang. He says there was no evidence he was an active participant in any group other than the Small Town Peckerwoods, and there was insufficient evidence of a connection between members of the Small Town Peckerwoods and anyone else.[26]

■ Evidence of gang activity and culture need not necessarily be specific to a particular local street gang as opposed to the larger organization. (See, e.g., *People v. Hawthorne* (1992) 4 Cal.4th 43, 53 [14 Cal.Rptr.2d 133, 841 P.2d 118]; *People v. Ortega* (2006) 145 Cal.App.4th 1344, 1356–1357 [52 Cal.Rptr.3d 535]; *In re Jose P., supra,* 106 Cal.App.4th at pp. 467–468; *In re Elodio O.* (1997) 56 Cal.App.4th 1175, 1178, 1180 [66 Cal.Rptr.2d 95], disapproved on other grounds in *People v. Sengpadychith* (2001) 26 Cal.4th 316, 323 [109 Cal.Rptr.2d 851, 27 P.3d 739].) This does not mean, however, that having a similar name is, of itself, sufficient to permit the status or deeds of the larger group to be ascribed to the smaller group. Thus, in *People v. Ortega, supra,* 145 Cal.App.4th at pages 1356–1357, the Court of Appeal rejected the assertion that the prosecution had to prove precisely which Norteno subset was involved in the case before it, noting that there was sufficient evidence Norteno was a criminal street gang, while "[n]o evidence indicated the goals *and activities* of a particular subset were not shared by the others." (Italics added.) The court stated: "In this case there was testimony that it was not uncommon for members of different gangs to work in concert to commit a crime. In light of the nature of gang structure and the apparent willingness of members to work with other gangs to commit crimes, requiring the prosecution to prove the specific subset of a larger gang in which a defendant operated would be an impossible, and ultimately meaningless task." (*Id.* at p. 1357.) In *In re Jose P., supra,* 106 Cal.App.4th at page 463, the gang expert testified that the Norteno street gang was an ongoing organization having around 600 members or associates in Salinas; that there were separate cliques or factions within the larger Norteno gang; that the two

---

*See footnote, *ante*, page 983.

[26] In making this argument, appellant refers, in passing, to the testimony of a gang expert in *People v. Schmaus* (2003) 109 Cal.App.4th 846 [135 Cal.Rptr.2d 521]. As noted in *In re Jose P.* (2003) 106 Cal.App.4th 458, 467 [130 Cal.Rptr.2d 810], "the expert testimony in [*Schmaus*] was evidence in that case, not this one. It is irrelevant to our determination of whether there is substantial evidence to support the gang findings here."

gangs at issue in the case were such subgroups; that the two subgroups were loyal to one another and to the larger Norteno gang; and that all Norteno gangs followed the same bylaws as the Norteno prison gangs.

Here, by contrast, Agent Dilbeck of the Madera Police Department testified that the Peckerwoods are a criminal street gang, as defined by the Penal Code, and that smaller groups, such as the Small Town Peckerwoods, are all factions of the Peckerwood organization. Insofar as is shown by the record before us, his conclusion appears to have been based on commonality of name and ideology, rather than concerted activity or organizational structure. He testified that Peckerwood groups share a White pride or White supremacist ideology, and there is a hierarchy, with "shot callers" who answer to a higher authority inside the prison system. It was Dilbeck's further testimony that Peckerwoods are not typically organized like other criminal street gangs, however: for the most part, they have no constitution, and are a looser organization with a less well-defined rank structure. Peckerwood groups get together more for bragging than for strategizing, and one group of Peckerwoods will not necessarily know what another group is doing.

In our view, something more than a shared ideology or philosophy, or a name that contains the same word, must be shown before multiple units can be treated as a whole when determining whether a group constitutes a criminal street gang. Instead, some sort of collaborative activities or collective organizational structure must be inferable from the evidence, so that the various groups reasonably can be viewed as parts of the same overall organization. There was no such showing here. Dilbeck's general references to "shot callers" answering to a higher authority within the prison system were insufficient, absent any testimony that the group calling themselves the Small Town Peckerwoods contained such a person, or that such a person was a liaison between, or authority figure within, both groups. There was testimony that appellant had a "Peckerwood" tattoo, and that Elisarraras identified himself to Dilbeck as a Peckerwood. There was also evidence that Rhyse Parsons believed being a member of the Small Town Peckerwoods would be relevant in a prison setting, and that a poem titled "Peckerwood Soldiers," which referred to Peckerwoods in prison, was found in what inferentially was Elisarraras's bedroom.[27] On the record before us, however, it would be speculative to infer that the Small Town Peckerwoods and the greater

---

[27] The writing read (as nearly as we can discern from the handwritten copy contained in the clerk's transcript): "We're Peckerwood Soldiers down/for a cause, California convicts/and solid outlaws. The rules/we live by are written in/stone, awesome an fearless we're/bad to the bone. [¶] We live in California Prisons/all long the way, the man tries/to down us with each passing day./Our bodies are solid an blazen/with in, warbirds on SS lightning/bolts the way that we think. [¶] When we go into battle our/hands are held high, some/may get hurt yet others may/die. It's a small price we/pay to survive in the yard, we're/Peckerwood Soldiers down for a/cause, California convicts and/solid outlaws."

Peckerwood gang shared more than an ideology, especially where the term "Peckerwood" has such an ideological or racial connotation in everyday parlance. (See, e.g., A Visual Database of Extremist Symbols, Logos and Tattoos <http://www.adl.org/hate_symbols/peckerwood.asp> [as of Oct. 22, 2008].) Elisarraras's apparent reference to getting a letter and having to kill Johnston because she was a snitch in a high-profile case does not alter this; we can only speculate as to the source of the letter or whether it was Peckerwood related. " '[S]peculation is not evidence . . . .' [Citations.]" (*People v. Waidla* (2000) 22 Cal.4th 690, 735 [94 Cal.Rptr.2d 396, 996 P.2d 46].)

In light of the foregoing, only the Small Town Peckerwoods, and not some larger Peckerwood group, may be considered in assessing appellant's claims of evidentiary insufficiency.

D.–F.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment of conviction and the deadly weapon use finding on count 1 are affirmed. The special circumstance finding on count 1 and conviction on count 2 are reversed.

Cornell, J., and Kane, J., concurred.

Petitions for a rehearing were denied November 17, 2008 and the opinion was modified to read as printed above. The petitions of both respondent and appellant for review by the Supreme Court were denied February 11, 2009, S168694. Baxter, J., and Werdegar, J., did not participate therein.

---

*See footnote, *ante*, page 983.