COURT OF APPEALS OF VIRGINIA


Present:   Judges Elder, Petty and Beales
Argued at Chesapeake, Virginia


FLOYD TAYBRON, S/K/A
  FLOYD L. TAYBRON
                                                               OPINION BY
v.      Record No. 2834-09-1                        JUDGE LARRY G. ELDER
                                                            JANUARY 11, 2011
COMMONWEALTH OF VIRGINIA


                   FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
                            Christopher W. Hutton, Judge

               Charles E. Haden for appellant.

               Eugene Murphy, Senior Assistant Attorney General (Kenneth T.
               Cuccinelli, II, Attorney General, on brief), for appellee.


        Floyd Taybron (appellant) appeals from his jury trial conviction for willfully

participating in a criminal act for the benefit of a criminal street gang of which he was a member

in violation of Code § 18.2-46.2.[1]  On appeal, he contends the gang participation statute under

which he was convicted is unconstitutionally vague and overbroad.  He also contends the

evidence was insufficient to prove he belonged to a gang whose members, individually or

collectively, had engaged in the predicate criminal acts required by the statute.  Finally, he

contends the trial court erred in admitting plea agreements and related sentencing orders to prove

those predicate acts.  Assuming without deciding that the trial court did not err in admitting the

plea agreements and related sentencing orders, we conclude the evidence was insufficient to

prove appellant belonged to "a criminal street gang" as defined by Code § 18.2-46.1, one of the

_____
        [1] The trial court granted appellant's motion to strike a charge of maiming by mob, and the
jury acquitted appellant of robbery and aggravated malicious wounding.

elements required to support his conviction under Code § 18.2-46.2. Thus, we reverse appellant's conviction and dismiss the indictment without considering the constitutionality of the statute.

## I.

### BACKGROUND

The evidence, viewed in the light most favorable to the Commonwealth, see, e.g., Finney v. Commonwealth, 277 Va. 83, 87, 671 S.E.2d 169, 172 (2009), established that on April 11, 2009, shortly after appellant's seventeenth birthday, he and other members of a group that called itself the 36th Street Bang Squad battered Clyde Bell at a nightclub.

On April 17, 2009, police executed an arrest warrant for appellant at his residence. They simultaneously executed a search warrant for the residence in an effort to obtain evidence related to that crime and any gang involvement. They seized numerous items of suspected gang paraphernalia from the immediate area around appellant and from a bedroom in the residence. Those items included a cell phone in a charger, a photograph, and a Cincinnati Reds baseball cap "with the letter 'C' on it" and appellant's nickname, "Lil Man," handwritten on the back. In a bedroom in the residence that contained male clothing, officers found some red rosary beads.

Appellant was indicted in the City of Hampton for, *inter alia*, one count of gang participation. At trial, Police Detective E.C. Sales testified as "an expert in the identification of gangs and gang members here in the City of Hampton." He explained that "the Bloods" are a nationally known gang that originated on the West Coast and that "the Bloods have several different sets of gangs that fall under the Bloods, just [like] Gangster Disciples or Vice Lord[s] [do]." He testified further that there are also "homegrown sets that rep Blood." He also explained the "homegrown sets that rep Blood" are influenced, among other things, by music and information available on the internet. Detective Sales described "beef[s] or disagreement[s]"

- 2 -

between rival gangs such as the Bloods and the Crips. He also testified on direct that "here [in Hampton], since there's not . . . a whole lot of organization . . . with our Blood gangs, or even our Crip gangs, they tend to beef amongst each other. Um, so you'll have Bloods fighting with Bloods."

The evidence established that when the attack on the victim occurred, appellant belonged to a gang called the 36th Street Bang Squad. Detective Sales said he first learned about the 36th Street Bang Squad in 2005 and that it was one of his duties with the police department's gang unit to track its members. By speaking with people and befriending them on the internet social networking website MySpace, Sales was able to determine that the 36th Street Bang Squad adopted various symbols and ideologies associated with the national Bloods gang. These adopted symbols included the colors black, red, and green; the Cincinnati Reds hat bearing a "C," considered by the gang to stand for Compton, California, where the Bloods gang originated; wearing red and black beads, particularly rosaries or other religious beads because they were less likely to be taken away in jail; using certain Swahili greetings and words used by the Bloods; and using various hand signs used by the Bloods. Detective Sales specifically described the 36th Street Bang Squad "guys [as] being affiliated with the Bloods, not a nationally known Blood set, but a homegrown [set] using the same ideologies . . . , verbiage and symbols used to rep Blood."

Sales testified about numerous photographs of appellant, which included other apparent 36th Street Bang Squad members and showed them wearing Bloods gang colors and symbols and "throwing up" various gang hand signals. He testified that the Cincinnati Reds "C" hat

> is one of the hats that . . . a lot of the Bloods typically wear around
> our city. Not everybody that wears this hat is a Blood, but
> typically, the gang members that I've come into contact with have
> been wearing this hat . . . , and several . . . individuals affiliated
> with the 36th Street Bang Squad wear this same hat.

Detective Sales also identified several of the males in the photographs as using the hand signal representing "36" for the 36th Street Bang Squad.

During Detective Sales' testimony at trial, the Commonwealth offered plea agreements and sentencing orders entered in Hampton Circuit Court involving two men, Arenzo King and Jumar Turner, who indicated they were "members[] or affiliat[es]" of "the Bloods criminal street gang" and stated that their commission of the offenses to which they pled guilty were "for the benefit of, or in association with," that gang. The Commonwealth maintained in appellant's trial that to support appellant's conviction under the statute, it had to prove that members of "a Blood criminal street gang," "not the criminal street gang[] 36th Street Bang Squad," committed offenses that constituted predicate criminal acts as used in the definition of criminal street gang in Code § 18.2-46.1. The Commonwealth asserted it satisfied this element through "all the testimony of Detective Sales . . . of the[] signs, symbols, and ideologies of the Bloods," as well as the plea agreements of King and Turner averring their connection to the Bloods. Appellant's counsel disagreed, arguing that the Commonwealth's argument, taken to the extreme, would permit appellant to be convicted if the Commonwealth proved a Bloods member in California had been convicted of an offense falling within Virginia's statute. The trial court ruled the exhibits would be admitted and that Detective Sales would be permitted to answer the Commonwealth's question on that issue.

The Commonwealth then played a video and asked Detective Sales to watch for "any signs, symbols or ideologies with respect to the criminal street gang the Bloods as well as a set of the Bloods, the 36th Street Bang Squad." Detective Sales subsequently testified about hand signals he observed in the video and noted the video included a roll call of individuals that were part of the 36th Street Bang Squad. Appellant was mentioned in the video by his nickname of "Lil Man."

Neither of the two people who admitted membership in the Bloods gang in the plea agreements introduced by the Commonwealth, Arenzo King or Jumar Turner, was mentioned in the video. In response to specific questioning, Detective Sales testified expressly that Turner and King were *not* members of the 36th Street Bang Squad. When appellant's counsel said, "[S]o they're members of the national organization you say [is] called the Bloods, correct?," Detective Sales responded, "No," and he explained that "the Bloods are nationally known, but there are homegrown sets that rep Blood," implying that Turner and King belonged to a "homegrown set[] that rep[s] Blood," rather than to the national Bloods gang, and that they belonged to a different "homegrown set" of Bloods than appellant.

At the close of the Commonwealth's case-in-chief, appellant moved to strike the evidence on the gang charge

> because the two charges that were presented . . . come from an overbroad perspective that . . . cannot be defended.
> . . . [T]his is saying you can introduce [a conviction] from anywhere.
> [A]ny time a group of young people get together and throw up Blood signs and yell and scream, they are a member of a criminal street gang, because you've had two convictions in 1990 on two plea agreements. So everybody who throws up Blood signs in the City of Hampton is now a member of a criminal street gang.

The trial court denied the motion to strike.

Appellant renewed his motion to strike at the close of all the evidence, incorporating all arguments he had previously made. The trial court recognized "there's still a legal issue there" "on the gang participation" but said "[w]e have been back and forth and thoroughly ventilated that." The court again denied the motion to strike, ruling "each of the . . . charges could be supported as a matter of law depending upon what the jury . . . determine the facts to be."

The jury convicted appellant for participating in a criminal act for the benefit of a criminal street gang of which he was a member. He filed a motion to set aside the conviction,

which the trial court denied after hearing argument. It then sentenced appellant to five years

with four years three months suspended upon various conditions, including a "Special

Condition" ordering appellant "not to have any contact with any members of the 36th Street

Bang Squad or any of its symbols."

Appellant noted this appeal.

II.

ANALYSIS

Appellant was convicted for violating Code § 18.2-46.2, which provides in relevant part

as follows:

> Any person who actively participates in or is a member of a
> *criminal street gang* and who knowingly and willfully participates
> in any predicate criminal act committed for the benefit of, at the
> direction of, or in association with any criminal street gang shall be
> guilty of a Class 5 felony.

Code § 18.2-46.2(A) (emphasis added). The term "criminal street gang" as used in that code

section is defined as

> any ongoing organization, association, or group of three or more
> persons, whether formal or informal, (i) which has as one of its
> primary objectives or activities the commission of one or more
> criminal activities; (ii) which has an identifiable name or
> identifying sign or symbol; and (iii) whose members individually
> or collectively have engaged in the commission of, attempt to
> commit, conspiracy to commit, or solicitation of two or more
> *predicate criminal acts*, at least one of which is an act of violence,
> provided such acts were not part of a common act or transaction.

Code § 18.2-46.1 (emphasis added).[2] Finally, a "predicate criminal act" as used in both the

definition of the crime proscribed in Code § 18.2-46.2(A) and the definition of a "criminal street

gang" is itself defined, in relevant part, as

---

[2] Neither prong (i) nor prong (ii) of the definition of a criminal street gang is at issue in this appeal.

- 6 -

> (i) an act of violence [as listed in Code § 19.2-297.1(A), including robbery, malicious felonious assault or felonious bodily wounding, and certain mob-related felonies]; (ii) any violation of [numerous other cited sections of the Virginia Code]; . . . or (v) any substantially similar offense under the laws of another state or territory of the United States, the District of Columbia, or the United States.

Code § 18.2-46.1.

On appeal, appellant contends the gang participation statutes are unconstitutionally vague and overbroad, that the trial court erred in admitting the plea agreements and related sentencing orders of King and Turner, two members of a different subset of the national gang with which appellant's gang was only loosely affiliated, and that the evidence was insufficient to prove appellant belonged to a gang whose members individually or collectively had engaged in the predicate criminal acts required by the statute because the acts the Commonwealth proved were committed by members of a different, only loosely affiliated gang subset.

Under settled principles of appellate review, we consider the evidence presented at trial in the light most favorable to the Commonwealth, the prevailing party below, and accord the Commonwealth the benefit of all reasonable inferences fairly deducible from the evidence. E.g., Hamilton v. Commonwealth, 279 Va. 94, 97 n.1, 688 S.E.2d 168, 170 n.1 (2010). We must uphold the conviction unless it is plainly wrong or without evidence to support it. Id. at 103, 688 S.E.2d at 173.

No Virginia appellate court has considered under what circumstances, if any, members of different local subsets of a national gang are members of the same "criminal street gang" for purposes of the definition in Code § 18.2-46.1. In Corado v. Commonwealth, 47 Va. App. 315, 623 S.E.2d 452 (2005) (decided under an earlier version of the statutory scheme), relied upon by the trial court in this case, the predicate criminal acts upon which the Commonwealth relied to establish the existence of a "criminal street gang" were committed by two members of the South

Side Locos gang, of which defendant Corado was also a member.  Id. at 321, 332, 623 S.E.2d at 455, 460.  The record showed these two members physically accompanied Corado to the place where he committed the offenses for which he was on trial.  Id.  Thus, the evidence readily supported the inference that the three were part of the same criminal street gang for purposes of the statutory definition, and Corado did not contend otherwise.

Similarly, in Hamilton, 279 Va. 94, 688 S.E.2d 168, in which the gang at issue was known as "the 'Nine Trey Bloods,'" the opinion expressly indicates no dispute existed over whether the people who committed the predicate criminal acts used to establish the existence of a criminal street gang were members of the same group or organization.  Id. at 104, 106, 109 n.5, 688 S.E.2d at 174, 175, 177 n.5.

Finally, in Phillips v. Commonwealth, 56 Va. App. 526, 694 S.E.2d 805 (2010), relied upon by the Commonwealth on brief, the opinion is silent on the issue of whether the predicate criminal acts used to establish the existence of a criminal street gang must be committed by individuals who are members of the same set or subset of the gang at issue.  Defendant Phillips' attack on his convictions was based on his claims that the Commonwealth failed to show that (a) the Bloods gang was in existence in Portsmouth when the alleged predicate criminal acts occurred and (b) the individuals upon whose convictions the Commonwealth relied were members of the gang at the time they committed the offenses.  Id. at 535, 694 S.E.2d at 809.  Although the opinion mentions in passing that at least one subset of the national Bloods gang, the Bounty Hunter Bloods, existed in Portsmouth, appellant did not challenge the predicate convictions on the ground that the "Bloods" upon whose convictions the Commonwealth relied belonged to a different subset of that national gang.

The testimony in Phillips concerning the interrelationship between subsets of the Bloods gang in Portsmouth also provides a relevant contrast to the evidence in the instant case about the

- 8 -

relationship between the relevant subsets of the Bloods gang in Hampton.[3]  In Phillips, the record showed that at the time of Phillips' trial, two sets of Bloods, the Bounty Hunter Bloods and the Nine Tek Gangsters, "claimed" the Cradock area of Portsmouth.  The record also showed that the two groups were based on different sides of the Cradock area but "operated in conjunction most of the time."  The Commonwealth's expert in Phillips testified that although each set had a separate hierarchy of gang officers, lower ranking members of both sets responded to orders from higher ranking members of either set.

In the instant case, by contrast, the Commonwealth's expert on Hampton gangs testified that although the Bloods are a nationally known gang that originated on the West Coast, there are also "homegrown sets that [merely] rep Blood."  He described the members of appellant's subset gang, the 36th Street Bang Squad, as merely "*being affiliated with* the Bloods, not a nationally known Blood set, but a homegrown [set] using the same ideologies and, um, verbiage and symbols used to rep Blood."  (Emphasis added).  He also testified that "there's not . . . a whole lot of organization with our Blood gangs."  As a result, he said, "they tend to beef amongst each other . . . so you'll have Bloods fighting with Bloods."

The evidence further established that Arenzo King and Jumar Turner, the two people whose convictions the Commonwealth relied upon as predicate criminal acts to establish the existence of a criminal street gang, were not members of appellant's subset gang, the 36th Street Bang Squad,[4] and the Commonwealth concedes this fact on appeal.  Further, although King's and Turner's convictions involved offenses *committed* in Hampton, nothing in the record

---

[3] Much of this evidence is not recited in the opinion in Phillips but is contained in the appendix filed in this Court as part of Phillips' appeal.  See Wright v. Commonwealth, 53 Va. App. 266, 281, 670 S.E.2d 772, 779 (noting a court may take judicial notice of its own records), aff'd on other grounds, 278 Va. 754, 685 S.E.2d 655 (2009).

[4] We assume without deciding that the trial court did not err in admitting the plea agreements and related sentencing orders of King and Turner.

indicates that the homegrown subset gang or gangs to which King and Turner belonged were even based in Hampton. When asked whether King and Turner were "*members* of the national organization . . . called the Bloods" (emphasis added), Detective Sales responded, "No." Detective Sales explained that "the Bloods are nationally known," but then repeated his earlier testimony that "there are homegrown sets that rep Blood," thereby indicating that King and Turner were not "members" of "the Bloods," the national gang, but were, instead, members only of a "homegrown set." Detective Sales made a clear distinction in his testimony between individuals who were members of particular gangs and those who merely affiliated or associated with them. The plea agreements King and Turner signed, in which each "admit[ted] . . . his membership [in] *or affiliation . . . with* the criminal street gang known as the Bloods" (emphasis added), are consistent with Detective Sales' expert testimony. The Commonwealth concedes "no connection whatsoever" was established between appellant and the 36th Street Bang Squad, on the one hand, and King and Turner, on the other, if not through the national Bloods organization.[5]

---

[5] The Commonwealth contends appellant failed to preserve for appeal the question whether the evidence proved King and Turner were Bloods. However, the record reflects the parties engaged in extensive argument during trial about what constituted membership in the same organization, association or group for purposes of both the admission of the plea agreements and the motions to strike and that these challenges implicated King's and Turner's potential status as members of both the same local group and the same national group as appellant. After Detective Sales testified King and Turner were not "members of the national organization . . . called the Bloods" and explained that "the Bloods are nationally known but there are homegrown sets that rep Blood," appellant argued in part:

> How broad is the gang? . . . I'm confident in California a lot of [defendants] have been convicted who are members of Blood – is that a predicate to say that every person that you say is a Blood . . . is a criminal street gang because of the California convictions? In this case it is too broad. . . . *We do not know what Blood gang that was. I assume somewhere here in Hampton there's another little homegrown unit*. . . . It's a broad, sweeping term, as testified by [Detective Sales].

The plain meaning of the statutory terms supports the conclusion that an insufficient connection was established.  See id. at 536, 694 S.E.2d at 810 (noting the plain meaning controls unless a statute is ambiguous).  The statute requires that the individual or individuals upon whose prior crimes the Commonwealth relies to establish "two or more predicate criminal acts" under Code § 18.2-46.1(iii) must be "members" of the same "ongoing organization, association, or group."  A member is defined as "[o]ne of the persons constituting [a particular group]," such as "a family, partnership, association, corporation, guild, court, legislature, or the like."  Black's Law Dictionary 887 (5th ed. 1979).  An *affiliation* with an organization, by contrast, "[i]mports *less than membership in [the] organization*, but more than sympathy."  Id. at 84 (citing Bridges v. Wixon, 326 U.S. 135, 143, 65 S. Ct. 1443, 1447, 89 L. Ed. 2103, 2109 (1945) (construing a federal statute permitting "exclu[sion] from membership into the United States of 'Aliens . . . who are members of or affiliated with [certain organizations or groups such as the Communist Party]'")) (emphasis added).

These definitions support the conclusion that the evidence, viewed in the light most favorable to the Commonwealth, establishes neither King nor Turner was a member of the national Bloods gang.  Instead, they were members of one or two homegrown local gangs, and they were merely loosely affiliated with the national Bloods gang through their respective homegrown local gang or gangs.  Similarly, appellant was a member of his homegrown local gang, the 36th Street Bang Squad, of which neither King nor Turner was a member, and appellant, likewise, was merely loosely affiliated with the national Bloods gang through that

---

(Emphasis added).  Although this challenge first arose at trial in the context of the admissibility of the plea agreements, appellant incorporated these arguments when he moved to strike the evidence.  Thus, the record reflects appellant preserved for appeal the issue of whether King and Turner were members of the same national or local Bloods organization as appellant.

- 11 -

homegrown local gang.  Thus, the evidence fails to establish that King or Turner was a member of the same local or national "ongoing organization, association, or group" as appellant.

The Commonwealth avers the statutory definition has been met on these facts and contends it could have established the predicate criminal acts via convictions of self-professed Bloods "in New York, California, Texas, anywhere . . . no matter how remote," as long as they all claim to be Bloods.  We disagree and hold that adopting the Commonwealth's position would render virtually meaningless the statute's requirement of establishing the requisite prior predicate criminal offenses in order to prove the existence of a criminal street gang.  See Va. State Crime Comm'n, HJR 573 Final Report:  Study of Criminal Gangs, H.D. Doc. No. 40, at 4 n.11, 6 (2006) [hereinafter Crime Comm'n, Gang Study] (recognizing the "importan[ce of] not[ing] that within gangs there can be different sets that are smaller distinct organizational units that have the same gang name but do not have knowledge or coordination with the other sets under that gang name" and that an accused member of the "Bloods" may avoid a finding of membership in a "criminal street gang" based on convictions of other Bloods in the same city if the evidence establishes that "in that one city, there are two mutually exclusive gangs, with different leaders and no interaction, that happen to share the same name").  We hold on the facts of this case that, because the evidence fails to prove either King or Turner was a member of the same local or national "ongoing organization, association, or group" to which appellant belonged, the crimes committed by King and Turner did not qualify as predicate criminal acts under Code § 18.2-46.1(iii)'s definition of a "[c]riminal street gang."

Although this issue is one of first impression in Virginia, the Court of Appeal of California considered an almost identical issue in People v. Williams, 86 Cal. Rptr. 3d 130 (Cal. Ct. App. 2008), in which the defendant was convicted of active participation in a criminal street gang called "the Small Town Peckerwoods," which was alleged to be part of a larger

- 12 -

"Peckerwood organization." Id. at 135. The statute Williams was convicted of violating, California Penal Code § 186.22, contained a definition of "criminal street gang" which was virtually identical to Virginia's definition in all respects important to this opinion. It required proof of

> any ongoing organization, association, or group of three or more persons, whether formal or informal, having as one of its primary activities the commission of one or more of the criminal acts enumerated in paragraphs (1) to (25), inclusive, of subdivision (e), having a common name or common identifying sign or symbol, and *whose members* individually or collectively engage in or have engaged in [two or more specified predicate criminal acts which were either committed by two or more persons or committed on separate occasions].

Cal. Pen. Code § 186.22(e), (f) (Deering 2004) (emphasis added).

On appeal, Williams challenged the sufficiency of the evidence to support the gang charge, contending the relevant group to consider was the local gang, the Small Town Peckerwoods, rather than the larger group, the Peckerwoods, and that the record contained insufficient evidence of the activities of the smaller group to support his conviction. 86 Cal. Rptr. 3d at 132, 134. The California Court of Appeal agreed and reversed Williams' conviction. Id. at 135. In deciding whether the actions of members of the larger group might properly be considered in determining whether the smaller group constituted a criminal street gang, the court observed that "[e]vidence of gang activity and culture need not necessarily be specific to a particular local street gang as opposed to a larger organization," and it summarized the court's rulings in two such prior cases:

> Thus, in People v. Ortega, [52 Cal. Rptr. 3d 535, 544 (Cal. Ct. App. 2006)], the Court of Appeal rejected the assertion that the prosecution had to prove precisely which Norteno subset was involved in the case before it, noting that there was sufficient evidence Norteno was a criminal street gang, while "[n]o evidence indicated the goals *and activities* of a particular subset were not shared by the others." (Italics added.) The court stated: "In this case there was testimony that it was not uncommon for members

- 13 -

of different gangs to work in concert to commit a crime. In light of the nature of gang structure and the apparent willingness of members to work with other gangs to commit crimes, requiring the prosecution to prove the specific subset of a larger gang in which a defendant operated would be an impossible, and ultimately meaningless task." [Id. at 544-45.] In In re Jose P., [130 Cal. Rptr. 2d 810, 813, 816 (Cal. Ct. App. 2003)], the gang expert testified that the Norteno street gang was an ongoing organization having around 600 members or associates in Salinas; that there were separate cliques or factions within the larger Norteno gang; that the two gangs at issue were such subgroups; that the two subgroups were loyal to one another and to the larger Norteno gang; and that all Norteno gangs followed the same bylaws as the Norteno prison gangs.

Id. at 134.

"Th[ese holdings] do[] not mean, however," reasoned the Court in Williams, "that having a similar name is, of itself, sufficient to permit the status or deeds of a larger group to be ascribed to the smaller group." Id. at 135.

[S]omething more than a shared ideology or philosophy, or a name that contains the same word, must be shown before multiple units can be treated as a whole when determining whether a group constitutes a criminal street gang. Instead, some sort of collaborative activities or collective organizational structure must be inferable from the evidence, so that the various groups reasonably can be viewed as parts of the same overall organization.

Id. In Williams, the testifying police expert described the Peckerwoods as having a White supremacist ideology but said they were "not typically organized like other criminal street gangs" because they did not have a constitution, were "a looser organization with a less well-defined rank structure," and would "get together more for bragging than for strategizing," meaning "one group of Peckerwoods will not necessarily know what another group is doing." Id. On this record, the California Court of Appeal concluded "it would be speculative to infer that the Small Town Peckerwoods and the greater Peckerwood gang shared more than an ideology." Id. In appellant's case, like in Williams, the evidence established a common name and ideology, but it failed to demonstrate any direct membership, concerted activity or a

- 14 -

common organizational structure with either the national Bloods organization or between appellant's homegrown subset and the homegrown subset or sets of King and Turner. Id.

Thus, far from the evidence in the record in Phillips, which established the two Portsmouth area subset Bloods gangs involved there shared an identical hierarchical structure and routinely operated in concert with each other, the evidence here fails to establish that King and Turner were "members" of the same national or local "organization, association or group" as required to attribute their prior criminal acts to appellant's group for the purpose of classifying it as a criminal street gang under Code §§ 18.2-46.1 and -46.2.[6] See also Crime Comm'n, Gang Study, supra, at 4 n.11, 6-7.[7]

III.

For these reasons, we hold the evidence was insufficient to support appellant's conviction for participating in a predicate criminal act for the benefit of a street gang to which he belonged

---

[6] We need not for purposes of this opinion—and, therefore, do not—make any sort of blanket ruling determining whether the Bloods or any other national group which fits within the statutory definition of a criminal street gang includes among its members the members of any local subset or other local affiliate gang. We determine only that, in this case, the evidence fails to establish that appellant, a member of the 36th Street Bang Squad, was a member of the national Bloods or some other gang organization to which Turner and King also belonged. See Williams, 86 Cal. Rptr. 3d at 134-35 (citing cases and discussing the factors involved in making such a determination).

[7] The Crime Commission's study concluded that "information already routinely gathered by the Virginia Department of Corrections and Virginia Department of Juvenile Justice could be used to create and maintain . . . a database" to aid prosecutors in proving the predicate criminal acts necessary to establish the existence of a criminal street gang and "to monitor the development of new gangs in Virginia [to] ascertain whether they have finally reached the level of being a 'criminal street gang.'" Crime Comm'n, Gang Study, supra, at 7.

in violation of Code § 18.2-46.2.  Thus, we reverse the challenged conviction and dismiss the

indictment.  In light of this holding, we do not consider the constitutionality of the statute.[8]

Reversed and dismissed.

_____

[8] Settled principles provide that "[a]n appellate court decides cases 'on the best and narrowest ground available,'" <u>Luginbyhl v. Commonwealth</u>, 48 Va. App. 58, 64, 628 S.E.2d 74, 77 (2006) (en banc) (quoting <u>Air Courier Conf. v. Am. Postal Workers Union</u>, 498 U.S. 517, 531, 111 S. Ct. 913, 921-22, 112 L. Ed. 2d 1125, 1139 (1991) (Stevens, J., concurring)), and avoids "rul[ing] upon the constitutionality of a statute unless such a determination is absolutely necessary to decide the merits of the case," <u>Volkswagen of Am. v. Smit</u>, 266 Va. 444, 454, 587 S.E.2d 526, 532 (2003).