KELSEY, Judge.
A jury convicted Christian Lee Rushing of participating in a criminal street gang in violation of Code § 18.2-46.2(A). On appeal, Rushing asserts a single assignment of error challenging the sufficiency of the evidence and requesting we reverse his conviction and dismiss the charge. Finding the evidence sufficient, we affirm.
I.
On appeal, we review the evidence in the “light most favorable” to the Commonwealth. Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003). This principle requires us to “discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair *598 inferences to be drawn therefrom.” Parks v. Commonwealth, 221 Va. 492, 498, 270 S.E.2d 755, 759 (1980) (emphasis and citation omitted). In determining whether there is sufficient evidence to sustain a conviction, moreover, an appellate court must consider “all the evidence” admitted at trial that is contained in the record. Hamilton v. Commonwealth, 279 Va. 94, 103, 688 S.E.2d 168, 173 (2010) (quoting Bolden v. Commonwealth, 275 Va. 144, 147, 654 S.E.2d 584, 586 (2008)).
From this perspective, the evidence at trial proved Rushing and an accomplice, William Travis Newton, went to the Hampton home of a person they believed to be a drug dealer, intending to rob him. Rushing targeted the victim after learning from his friend “Snails” (a member of the “Crips” gang) that the intended victim had $15,000 in cash inside the home. Armed with handguns, Rushing and Newton broke into the home wearing bandannas over their faces while the getaway car (driven by Newton’s grandmother) waited a block away. Inside the home, they did not find the expected drug dealer but rather a 75-year-old man who owned the home. One of the intruders exclaimed, “let’s get out of here; we got the wrong house.” Newton shot the man, and both he and Rushing fled the scene.
Hampton police officers later arrested Newton and Rushing. At the time of his arrest, Rushing had in his pockets a set of brass knuckles, a straight razor, and several bandannas with blue, black, and white coloring. During a search of Newton’s home, police found extensive evidence of gang activity, including gang notebooks, rules, graffiti, and eighteen blue, black, and white bandannas. Officers also found at Newton’s address the two handguns Newton and Rushing used during the break-in.
At the joint jury trial of Newton and Rushing, the trial court admitted into evidence the gang notebooks, writings, drawings, and bandannas found in Newton’s home. Over Rushing’s objection, the court also admitted a photograph of Rushing making a pitchfork hand sign. Rushing’s counsel argued no foundation had been laid for admitting the photo *599 graph. The prosecution’s main witness was a police detective with expertise in identifying criminal gangs. Testifying as an expert, the detective stated the gang materials found in Newton’s home were those of a street gang called the Gangsta Disciples. The pitchfork hand sign and the gang affiliating colors of blue and black, the detective explained, identified the gang as the Gangsta Disciples.
The detective testified he spoke with Newton prior to trial. The detective used the secret greeting for the Gangsta Disciples (asking Newton if he was “Folk”) and received from Newton the appropriate reply (“all is one”). Additional questions by the detective further confirmed Newton’s membership in the gang. Newton also used the pitchfork hand sign, among others, to identify his gang membership.
The Gangsta Disciples, the detective testified, originated in Chicago and had twenty-three known members in Hampton. The detective stated Gangsta Disciples are “involved in all sorts of criminal activities, from robberies to burglaries, stolen cars, narcotics distribution.” “That’s what Larry Hoover is incarcerated for,” the detective added, “one of the leaders.” Advancement within the hierarchy of the gang, the detective added, required a member to commit various crimes escalating in seriousness.
The detective identified Deanthony Clark as a local member of the Gangsta Disciples. During the detective’s testimony, the trial court admitted into evidence a conviction order showing Clark had pled guilty to carjacking and using a firearm during a felony. Over Rushing’s objection, the trial court also admitted into evidence a sentencing order, plea agreement, and stipulation of facts showing Darryl Brandon Lollis had been convicted of gang participation and robbery. In the stipulation of facts, Lollis admitted to being a member of the Gangster Disciples—a phrase used at trial and on appeal interchangeably with Gangsta Disciples.[1]
*600 The jury convicted Rushing of participating in a criminal street gang. Rushing moved to set aside the gang participation verdict on the ground that no evidence proved his “membership in a gang, his active membership in a gang, or any transaction showing he participated in something for a gang.” The trial court denied the motion and entered final judgment.
II.
A. THE SCOPE OF APPELLATE REVIEW
After reciting the standard of review governing sufficiency claims, the argument section of Rushing’s brief opens with this assertion: “The Circuit Court erred by finding the evidence sufficient to convict appellant of gang participation.” Appellant’s Br. at 6. The argument then proceeds to challenge individual items of evidence, claiming they were either inadmissible or insufficient to prove guilt. The brief ends with exactly the same point:
The evidence was insufficient to convict appellant of gang participation because there was no evidence that he had any knowledge of writings, drawings or gang paraphernalia found at 40 Deep Creek Road, the prior felony convictions of Mr. Clark and Mr. Lollis were improperly admitted, and the photo of appellant was improperly admitted and failed to prove any membership in Gangsta Disciples.
Id. at 10-11 (emphasis added). On this ground, Rushing contends we should “reverse” his conviction and “dismiss the charge against him.” Id. at 11; see generally Rule 5A:20(f) (requiring appellant’s brief to state “the precise relief sought” on appeal).
*601 At oral argument, Rushing’s counsel clarified that the evidentiary issues are “subsets” of the sufficiency assignment of error. Oral Argument Audio at 00:50. In other words, counsel explained, the argument on appeal was “two-pronged”—challenging the sufficiency of the properly admitted evidence, and, alternatively, challenging the sufficiency of all the evidence. Id. at 2:25 to 2:34, 6:26 to 6:28. When asked at oral argument how counsel could “meld and blend” the arguments together to “make one argument,” she replied that “even if’ the improperly admitted exhibits are considered, the evidence “remains insufficient.” Id. at 6:14 to 6:50.
In his brief, the Attorney General accurately restates Rushing’s argument on appeal: “The defendant contends in his Assignment of Error that the evidence was insufficient to prove the charge of gang participation because prior felony convictions of gang members and a photograph of the defendant were improperly admitted.” Appellee’s Br. at 12 (emphasis added). Realizing Robinson’s conflated argument can be defeated in either one of two ways, the Attorney General argues
(i) our sufficiency review on appeal should take into account “all the evidence at trial, including evidence alleged to have been erroneously admitted,” id. at 11 (citations omitted and emphasis added), and,
(ii) the evidence challenged by Rushing “was properly admitted and was sufficient to sustain the conviction for gang participation,” id. at 14 (emphasis added).
See also Oral Argument Audio at 14:03 to 14:11 (Assistant Attorney General pointing out that sufficiency of the evidence is the “overriding question” presented by this case).
We present in detail Rushing’s argument on appeal to clarify the scope of our review. When a “reversal is for mere trial error, and not for evidentiary insufficiency, we will remand the case for a new trial.” Gray v. Commonwealth, 220 Va. 943, 946, 265 S.E.2d 705, 706 (1980) (citations omitted). In this case, however, Rushing does not ask whether the claimed evidentiary errors warrant a remand for a new trial. “We *602 thus do not answer this unasked question.” Lay v. Commonwealth, 50 Va.App. 330, 336 n. 3, 649 S.E.2d 714, 716 n. 3 (2007). Under the adversarial model of adjudication, the litigants—not the judges—determine the issues to be decided, the facts to be presented, and the range of remedies to be sought. By necessity, the adversarial model “is designed around the premise that the parties know what is best for them, and are responsible for advancing the facts and arguments entitling them to relief.” Castro v. United States, 540 U.S. 375, 386, 124 S.Ct. 786, 794, 157 L.Ed.2d 778 (2003) (Scalia, J., concurring in part).
For these reasons, we address only the sufficiency argument Rushing makes on appeal.[2] Under his “two-pronged” argument, Rushing contends we must limit our sufficiency review to the properly admitted evidence, and “even if’ we consider the improperly admitted evidence, we should nevertheless find the evidence, in its entirety, insufficient to support the jury verdict. Oral Argument Audio at 2:25 to 2:34, 6:14 to 6:50; see also Appellant’s Br. at 7-8 (arguing the court “erred by admitting certified copies of prior convictions of alleged gang members” because “the evidence was insufficient to show that Mr. Clark was a [gang] member”); id. at 9-10 (arguing the “photograph of appellant ... was insufficient to prove his [gang] membership” because “no foundation was laid for the photo”). As Rushing frames the debate, the evidentiary issues are merely “subsets” of the sufficiency analysis. See Oral Argument Audio at 00:50.
B. EVIDENTIARY ERRORS AND SUFFICIENCY
We begin our analysis by disagreeing with Rushing’s assumption that we must first segregate the admissible evidence from the inadmissible before conducting a sufficiency review. Under settled principles, an appellate court reviewing *603 the sufficiency of the evidence in a criminal case—with its concomitant double jeopardy implications—must consider all of the evidence actually admitted at trial without regard to whether it was properly admitted:
An “appellate court’s reversal for insufficiency of the evidence is in effect a determination that the government’s case against the defendant was so lacking that the trial court should have entered a judgment of acquittal.” Lockhart v. Nelson, 488 U.S. 33, 39, 109 S.Ct. 285 [290], 102 L.Ed.2d 265 (1988). Because reversal for insufficiency of the evidence is equivalent to a judgment of acquittal, such a reversal bars a retrial. See Burks v. United States, 437 U.S. 1, 18, 98 S.Ct. 2141 [2150-51], 57 L.Ed.2d 1 (1978). To “make the analogy complete” between a reversal for insufficiency of the evidence and the trial court’s granting a judgment of acquittal, Lockhart, 488 U.S., at 42 [109 S.Ct. at 291], “a reviewing court must consider all of the evidence admitted by the trial court,” regardless whether that evidence was admitted erroneously, id., at 41 [109 S.Ct. at 291],
McDaniel v. Brown, — U.S. -, -, 130 S.Ct. 665, 672, 175 L.Ed.2d 582 (2010) {per curiam) (emphasis added); see Lockhart, 488 U.S. at 39-42, 109 S.Ct. at 290-92; see generally 6 Wayne R. LaFave, Criminal Procedure § 25.4(c), at 652 (3d ed. 2007) (“As one court put it, the appellate court applying Burks is ‘assessing the legal sufficiency of the evidence not at the trial that will be, but at the trial that was.’ ” (citation omitted)); 26 Moore’s Federal Practice—Criminal Procedure § 629.30[2], at 629-62 (3d ed. 2007) (“A trial court ... considers all of the evidence it has admitted, and to make the analogy complete it must be this same quantum of evidence that is considered by the reviewing court.”).[3]
*604 We acknowledge, but do not find controlling on this particular point, Crawford v. Commonwealth, 281 Va. 84, 112, 704 S.E.2d 107, 123-24 (2011), which stated a defendant’s “Constitutional protections” forbid an appellate court from considering “evidence illegally admitted” at trial when “reviewing the sufficiency of the evidence.” For two reasons, we cannot follow this dictum.
First, Crawford held that, even without the inadmissible evidence, the remaining evidence was sufficient to prove the defendant’s guilt. That conclusion made it logically unnecessary to determine whether the result would be any different even with the inadmissible evidence being considered. In other words, it did not matter whether the challenged evidence was considered for purposes of the sufficiency review— the unchallenged evidence was alone sufficient. See generally Cent. Green Co. v. United States, 531 U.S. 425, 431, 121 S.Ct. 1005, 1009, 148 L.Ed.2d 919 (2001) (characterizing a portion of a prior opinion as “unquestionably dictum because it was not essential to our disposition”); Lofton Ridge, LLC v. Norfolk S. Ry., 268 Va. 377, 383, 601 S.E.2d 648, 651 (2004) (noting a “justification for the ruling” that was “unnecessary to the holding ... is dicta”).[4]
*605 Second, the question whether “Constitutional protections” forbid an appellate court “reviewing the sufficiency of the evidence” from considering “evidence illegally admitted” at trial, Crawford, 281 Va. at 112, 704 S.E.2d at 123-24, involves an application of the double jeopardy doctrine.[5] Despite the “unusual and delicate situation,” Wilson v. Taylor, 658 F.2d 1021, 1035 (5th Cir.1981), in which we find ourselves, this much is certain: When a state supreme court opinion, whether in dicta or in its holding, conflicts with a holding of the United States Supreme Court on an issue of federal constitutional law, the United States Supreme Court ruling remains the binding precedent—“any state law, decision, or rule to the contrary notwithstanding.” Chesapeake & O.R. Co. v. Martin, 283 U.S. 209, 221, 51 S.Ct. 453, 458, 75 L.Ed. 983 (1931). “Needless to say,” only the United States Supreme Court “may overrule one of its precedents.” Thurston Motor Lines, Inc. v. Jordan K. Rand, Ltd., 460 U.S. 533, 535, 103 S.Ct. 1343, 1344, 75 L.Ed.2d 260 (1983) (per curiam). A “state supreme court,” of course, “has no discretion to disregard” applicable holdings of the United States Supreme Court. Jaynes v. Commonwealth, 276 Va. 443, 458, 666 S.E.2d 303, 311 (2008).
In short, under the authority of United States Supreme Court decisions in McDaniel and Lockhart, an appellate court reviewing the sufficiency of the evidence “ ‘must consider all of the evidence admitted by the trial court,’ regardless of whether that evidence was admitted erroneously.’ ” McDaniel, — U.S. at -, 130 S.Ct. at 672 (quoting Lockhart, 488 U.S. at *606 41, 109 S.Ct. at 291). Given this authority from the United States Supreme Court, our sufficiency analysis must consider, therefore, all of the evidence actually admitted at trial without regard to whether it was properly admitted. We thus do not segregate, as Rushing requests, the allegedly inadmissible evidence from all of the admitted evidence for the purpose of reviewing the sufficiency of the evidence supporting the jury’s verdict.
C. APPELLATE REVIEW OF SUFFICIENCY CHALLENGES
An appellate court does not “ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.” Williams v. Commonwealth, 278 Va. 190, 193, 677 S.E.2d 280, 282 (2009) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)) (emphasis in original).[6] “Rather, the relevant question is whether ‘any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.’ ” Id. (citation omitted and emphasis in original). Thus, when a jury has rendered its verdict, “it is not for this court to say that the evidence does or does not establish his guilt beyond a reasonable doubt because as an original proposition it might have reached a different conclusion.” Cobb v. Commonwealth, 152 Va. 941, 953, 146 S.E. 270, 274 (1929). Suffice it to say, an “appellate court is no substitute for a jury.” Id.[7]
*607 Consequently, we are “not permitted to reweigh the evidence,” Nusbaum v. Berlin, 273 Va. 385, 408, 641 S.E.2d 494, 507 (2007), because appellate courts have no authority “to preside de novo over a second trial,” Haskins v. Commonwealth, 44 Va.App. 1, 11, 602 S.E.2d 402, 407 (2004). Instead, we give
juries the wide discretion to which a living record, as distinguished from a printed record, logically entitles them. The living record contains many guideposts to the truth which are not in the printed record; not having seen them ourselves, we should give great weight to the conclusions of those who have seen and heard them.
Bradley v. Commonwealth, 196 Va. 1126, 1136, 86 S.E.2d 828, 834 (1955).
This deferential appellate standard “applies not only to findings of fact, but also to any reasonable and justified inferences the fact-finder may have drawn from the facts proved.” Sullivan v. Commonwealth, 280 Va. 672, 676, 701 S.E.2d 61, 63-64 (2010); see also Clanton v. Commonwealth, 53 Va.App. 561, 566, 673 S.E.2d 904, 907 (2009) (en banc). Thus, a factfinder may “draw reasonable inferences from basic facts to ultimate facts,” Haskins, 44 Va.App. at 10, 602 S.E.2d at 406 (citation omitted), unless doing so would push “into the realm of non sequitur” Thomas v. Commonwealth, 48 Va.App. 605, 608, 633 S.E.2d 229, 231 (2006) (citation omitted).
D. CRIMINAL STREET GANG PARTICIPATION
The jury convicted Rushing of participating in a criminal street gang in violation of Code § 18.2-46.2(A), which provides: “Any person who actively participates in or is a member of a criminal street gang and who knowingly and willfully participates in any predicate criminal act committed for the benefit of, at the direction of, or in association with any criminal street gang shall be guilty of a Class 5 felony.” The crime involves two elements—status and conduct. While either an active participant or member in a criminal street gang, *608 the defendant must participate in a predicate criminal act related to any criminal street gang.
The status element turns on the statutory definition of a criminal street gang, which includes
any ongoing organization, association, or group of three or more persons, whether formal or informal, (i) which has as one of its primary objectives or activities the commission of one or more criminal activities; (ii) which has an identifiable name or identifying sign or symbol; and (iii) whose members individually or collectively have engaged in the commission of, attempt to commit, conspiracy to commit, or solicitation of two or more predicate criminal acts, at least one of which is an act of violence, provided such acts were not part of a common act or transaction.
Code § 18.2-46.1 (emphasis added). The conduct element of the crime requires only proof that the defendant “knowingly and willfully” participated in a “predicate criminal act committed for the benefit of, at the direction of, or in association with any criminal street gang____” Code § 18.2-46.2(A).
The evidence at trial amply supports the rationality of the jury verdict finding Rushing guilty of violating Code § 18.2-46.2(A). Testifying as a gang expert, the detective described the bandannas, colors, hand signs, and other unique indicia of membership associated with the Gangsta Disciples gang. The evidence showed Rushing wore a bandanna in Gangsta Disciples colors during the home invasion. The picture of him flashing the pitchfork hand sign, a symbol unique to the gang, further confirms his status. The evidence also showed Rushing planned and executed the crime with Newton—who also wore a telltale bandanna during the crime, had evidence in his home of the pitchfork and other gang symbols, and used the secret Gangsta Disciples greeting.
In addition, the detective identified Deanthony Clark as a local member of the Gangsta Disciples. Clark’s convictions for carjacking and use of a firearm during a felony, and Lollis’s convictions for robbery and gang participation, prove the predicate criminal “acts of violence” committed “individu *609 ally or collectively” by members of the putative gang under Code § 18.2-46.1. See Code § 19.2~297.1(A)(i)(e) (identifying robbery and carjacking as “acts of violence”). The stipulation of fact executed by Darryl Brandon Lollis, acknowledging his membership in the Gangsta Disciples, similarly satisfied the requirements of Code § 18.2-46.1.[8]
Rushing argues the evidence fails to establish the status element of Code § 18.2-46.2(A) because he had no relationship with either Clark or Lollis and did not participate in their respective crimes. Nothing in the governing statutes, however, requires such proof. The status element of Code § 18.2-46.2(A) requires only that the defendant actively participate in or be a member of a criminal street gang. The definition of a criminal street gang in Code § 18.2-46.1 includes any “formal or informal” group exhibiting three specified gang-related characteristics. The requirement that members of the group have “individually or collectively” committed predicate criminal acts, Code § 18.2-46.1, “permits proof of individually committed acts to establish a pattern of criminal gang activity.” Corado v. Commonwealth, 47 Va.App. 315, 333, 623 S.E.2d 452, 460 (2005) (construing former Code § 18.2-46.1). The defendant need not participate in the predicate criminal acts or have any personal relationship with the gang members who committed them.
Citing Taybron v. Commonwealth, 57 Va.App. 470, 703 S.E.2d 270 (2011), Rushing argues “[j]ust as in Taybron, the Commonwealth failed to demonstrate the existence of a criminal street gang under Va.Code § 18.2-46.2.” Appellant’s Br. at 9. We disagree. Despite its broad language, Taybron held *610 “only that, in this case, the evidence fails to establish that appellant, a member of the 36th Street Bang Squad, was a member of the national Bloods or some other gang organization to which Turner and King also belonged.” Id. at 486 n. 6, 703 S.E.2d at 278 n. 6 (emphasis added).
In other words, Taybron addressed only the question whether the evidence proved the defendant belonged to the same criminal street gang as those who had committed the predicate criminal acts. Taybron did not interpret the statutes to require that the members of the criminal street gang have any specific relationship with one another beyond belonging to the same gang. Nor did Taybron suggest the defendant must participate in the predicate acts used to prove the existence of a criminal street gang under Code § 18.2-46.1. Neither requirement appears in the statutes or our interpretation of them in Taybron.
III.
In sum, the evidence before the jury, viewed in its entirety, amply supports the rationality of the jury’s finding that Rushing participated in a criminal street gang in violation of Code § 18.2-46.2(Á). We thus affirm Rushing’s conviction.

Affirmed.

. Rushing’s opening brief on appeal, as well as his petition for appeal, states: "The Circuit Court also admitted, over appellant’s objection, a *600 prior conviction of an individual named Darryl Brandon Lollis in which Mr. Lollis was convicted in Norfolk of robbery and gang participation, specifically membership in Gangsta Disciples." See Petition for Appeal at 10-11; Appellant’s Br. at 5. So, too, in oral argument on appeal, Rushing's counsel treated the phrases as interchangeable. See Oral Argument Audio at 7:28 to 8:21; see also App. at 250-51, 285, 292, 299, 402 (showing interchangeable use of the phrases at trial).

. We came to a similar conclusion in Lunsford v. Commonwealth, 55 Va.App. 59, 62, 683 S.E.2d 831, 833 (2009), where the appellant, "in essence, ask[ed] this Court to accept his argument that [certain items of evidence] were inadmissible hearsay, and ask[ed] that we then consider the sufficiency of the evidence to convict absent that evidence.”

. See also Watts v. Commonwealth, 57 Va.App. 217, 232, 700 S.E.2d 480, 488 (2010) (stating “we must consider the improperly admitted [evidence] in our sufficiency analysis”); Andrews v. Creacey, 56 Va.App. 606, 620 n. 4, 696 S.E.2d 218, 224 n. 4 (2010) ("While wife on appeal challenges the admissibility of the guardian ad litem's report, we consider it in determining the sufficiency of the evidence.”); Wil *604 der v. Commonwealth, 55 Va.App. 579, 596 n. 7, 687 S.E.2d 542, 550 n. 7 (2010) (“The issue this Court must resolve in a case such as this is whether the evidence actually presented is sufficient as a matter of law, not whether the evidence that should have been presented is sufficient."); Lunsford, 55 Va.App. at 62, 683 S.E.2d at 833 ("When determining the sufficiency of the evidence, we consider all admitted evidence, including the evidence appellant here asserts was inadmissible.”); Sprouse v. Commonwealth, 53 Va.App. 488, 493, 673 S.E.2d 481, 483 (2009) (“However, when assessing the sufficiency of the evidence on appeal, 'we consider all admitted evidence, including illegally admitted evidence.' " (citation omitted)); Hargraves v. Commonwealth, 37 Va.App. 299, 312-13, 557 S.E.2d 737, 743 (2002) (holding “we consider all admitted evidence, including illegally admitted evidence” (citing Lockhart, 488 U.S. at 41, 109 S.Ct. at 291)).

. Similar dicta exists in Velazquez v. Commonwealth, 263 Va. 95, 105-06, 557 S.E.2d 213, 219 (2002) ("If the evidence adduced at trial, excluding the improperly admitted expert opinion testimony, was insufficient to convict ..., he is entitled to an acquittal____”). But that declaration, too, was unnecessary to the actual holding in that case.

. Virginia courts "have consistently held that the protections afforded under the Virginia Constitution are co-extensive with those in the United States Constitution.” Bennefield v. Commonwealth, 21 Va.App. 729, 739-40, 467 S.E.2d 306, 311 (1996) (citations omitted); see also Stephens v. Commonwealth, 263 Va. 58, 62, 557 S.E.2d 227, 230 (2002) ("Virginia's constitutional guarantee against double jeopardy affords a defendant the same guarantees as the federal Double Jeopardy Clause.”); Martin v. Commonwealth, 221 Va. 720, 722, 273 S.E.2d 778, 780 (1981); Armstead v. Commonwealth, 55 Va.App. 354, 357, 685 S.E.2d 876, 877 (2009); Peterson v. Commonwealth, 5 Va.App. 389, 394, 363 S.E.2d 440, 443 (1987).

. See also Sullivan v. Commonwealth, 280 Va. 672, 676, 701 S.E.2d 61, 63 (2010); Prieto v. Commonwealth, 278 Va. 366, 399, 682 S.E.2d 910, 927 (2009); McMillan v. Commonwealth, 277 Va. 11, 19, 671 S.E.2d 396, 399 (2009); Jones v. Commonwealth, 277 Va. 171, 182, 670 S.E.2d 727, 734 (2009); Maxwell v. Commonwealth, 275 Va. 437, 442, 657 S.E.2d 499, 502 (2008).

. See also Courtney v. Commonwealth, 281 Va. 363, 368, 706 S.E.2d 344, 347 (2011) ("As we have said on many occasions, '[I]f there is evidence to support the convictions, the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.’ ” (citation omitted)).

. As noted earlier, the detective testified Gangsta Disciples are "involved in all sorts of criminal activities, from robberies to burglaries, stolen cars, narcotics distribution.” “That's what Larry Hoover is incarcerated for,” the detective added, "one of the leaders.” Given our holding, we need not decide whether this evidence rendered harmless any evidentiary objections to the stipulation of fact by Lollis. See generally Kirby v. Commonwealth, 50 Va.App. 691, 698, 653 S.E.2d 600, 604 (2007) (summarizing harmless error standard for nonstructural trial error).