PRESENT: Kinser, C.J., Lemons, Goodwyn, Millette, and Mims, JJ., and Russell and Koontz, S.JJ.

CHRISTIAN LEE RUSHING

OPINION BY
v.  Record No. 111569      SENIOR JUSTICE CHARLES S. RUSSELL
June 7, 2012

COMMONWEALTH OF VIRGINIA

FROM THE COURT OF APPEALS OF VIRGINIA

This appeal presents questions concerning the admissibility and sufficiency of the evidence offered to support a conviction of criminal street gang participation in violation of Code § 18.2-46.2(A).

## Facts and Proceedings

At a jury trial in the Circuit Court of the City of Hampton, Christian Lee Rushing was convicted of aggravated malicious wounding, use of a firearm while committing aggravated malicious wounding, burglary while armed, use of a firearm while committing burglary, and participation in a criminal street gang. On March 12, 2010, the circuit court sentenced him to a total of 51 years incarceration for those offenses, with 32 years suspended. Only two of those offenses are before this Court on appeal, criminal gang participation and use of a firearm in commission of burglary.

In accordance with familiar principles of appellate review, the facts will be stated in the light most favorable to the Commonwealth, the prevailing party at trial. On August 1, 2008,

Christian Lee Rushing and his co-defendant William Travis Newton were both 16-year-old residents of Newport News. According to Newton's later statement to the police, a member of the "Crips" gang had told Rushing that a certain house in nearby Hampton belonged to a drug dealer, that $15,000 in cash could be found there, and that no one would be at home. Newton and Rushing got a ride to Hampton and "scope[d] out" the house. They decided to break into the house and returned on August 1, 2008 for that purpose. They pried open a patio door with a crowbar and entered the house from the rear.

The house was occupied by 75-year-old Benjamin O'Dell, who was not a drug dealer and who lived there alone. O'Dell was at the top of a flight of four steps that descended from the living room level to the lower level where the front door was located. Newton and Rushing appeared below him, having come through another room on the lower level. Both Newton and Rushing were carrying handguns. Newton fired a shot at O'Dell that missed and hit the ceiling. O'Dell heard one of them say: "let's get out of here; we [have] got the wrong house." Rushing fled but Newton remained long enough to fire two more shots, both of which struck O'Dell in the side, penetrating his abdomen. O'Dell suffered injuries requiring extensive surgery that included removal of a kidney and repair of the duodenum. He remained in a hospital more than a month, followed by a period

2

of rehabilitation.  He was able to identify both defendants at trial as the perpetrators.

Rushing and Newton were both arrested by Newport News police officers and their homes were searched pursuant to search warrants.  The two handguns the defendants had used were the property of Newton's grandfather, who identified them as his. Newton at first denied involvement but later, after being shown the handguns, admitted that it was he, and not Rushing, who had shot O'Dell.  The search of Rushing's home produced nothing of consequence, but a search of his person incident to his arrest produced brass knuckles, bandannas, and a straight razor.  The search of Newton's home produced, in addition to the handguns, numerous indicia of gang membership including notebooks, drawings, writings, and bandannas.

Newton and Rushing were tried together. The Commonwealth presented the testimony of Detective Ernest Corey Sales, the officer in charge of the "gang unit" of the Hampton police.  The court admitted his testimony as an expert witness on the subjects of gang identification and gang ideologies.  He testified extensively as to the origins, alliances, rivalries, insignia, traditions, and lore of various street gangs extant throughout the country.  Detective Sales opined that both Rushing and Newton were members of a gang originating in Chicago known as "Gangsta Disciples" (GD), who sometimes referred to

3

themselves as the "Folk" or the "Folk Nation." He testified that he personally knew of 23 GD members in his immediate area and that the gang was active there and elsewhere. He stated that the primary purpose of all street gangs was the commission of crimes, including drug distribution, car theft, and robbery and that members advance in status within the gang by committing these crimes.

The detective testified that his opinion of Rushing's affiliation with GD was based primarily on two things. First was a photograph of Rushing making a GD recognition hand signal called "throwing up a pitchfork." The second was Rushing's participation with Newton in committing the crimes against O'Dell.[1] The photographer did not testify, nor did any witness identify the photograph as a fair representation of the scene it portrayed or describe the circumstances existing when it was taken. The court admitted the photograph in evidence over Rushing's objection that it lacked any foundation.

The statutory definition of "criminal street gang" contained in Code § 18.2-46.1 requires proof that the gang's members have committed, or attempted or conspired or solicited

---

[1] Sales, interviewing Newton, asked him if he was "Folk." Newton responded by saying: "[A]ll is one." Sales testified that this was the proper response to that question by a member of GD. The notebooks found in Newton's bedroom were filled with the gang's symbols, rules and insignia.

others to commit, two or more predicate criminal acts, at least one of which was a crime of violence.  To comply with this requirement, the Commonwealth offered certified copies of court orders showing the convictions of two individuals.  The first indicated that Darryl Brandon Lollis pleaded guilty in the Circuit Court of the City of Norfolk to robbery and criminal gang participation.  In the attached plea agreement and stipulation of facts, Lollis admitted he was a member of GD.

The second conviction order indicated that Deanthony Clark pleaded guilty in the Circuit Court of the City of Hampton to carjacking and the use of a firearm.  Detective Sales opined that Clark was a member of GD because he had once observed Clark, sitting in a chair in a school office, wearing black and blue beads.  Sales testified that black and blue beads are insignia worn by GD members.

Rushing objected to the admission of these orders on the ground that there was no indication of any connection between Rushing and either Lollis or Clark, and on grounds of relevancy and hearsay.  The court held that the orders were relevant as proof of predicate offenses required to establish an element of the crimes: that GD was a criminal street gang.

Rushing appealed his convictions to the Court of Appeals. A single judge denied his petition and he requested review by a three-judge panel.  The panel granted the appeal as to a single

5

assignment of error, denying two others.  The Court of Appeals

rephrased the granted assignment to read as follows, deleting

matter contained in the assignment Rushing had made in his

petition for appeal:

> The circuit court erred by finding the evidence
> sufficient to convict appellant of gang
> participation because of insufficient evidence,
> because prior felony convictions of alleged gang
> members were improperly admitted, and a photo of
> appellant allegedly making a gang sign was
> improperly admitted.

By a published opinion, a divided panel affirmed the

convictions.  Rushing v. Commonwealth, 58 Va. App. 594, 712

S.E.2d 41 (2011).  The panel majority noted that Rushing had not

asked for a new trial, which would be his remedy if evidence

were to be held improperly admitted, but rather had asked that

the gang participation conviction be reversed and the charge

dismissed because the evidence was insufficient to support it.

The panel majority therefore declined to address the issues of

admissibility of evidence.  The majority held that on appellate

review of the sufficiency of the evidence, all the evidence must

be considered, whether improperly admitted or not.  Thus,

including the challenged evidence of the photograph and the

orders of conviction, the majority found the evidence sufficient

to support the conviction and affirmed.  Id. at 602-03, 712

S.E.2d at 45-46.  One judge dissented on the ground that the

majority had erred in refusing to consider Rushing's challenge

6

to the admissibility of the photograph and the conviction orders.  Id. at 610-11, 712 S.E.2d at 49.  We awarded Rushing an appeal.

## Analysis

### A.  Gang Participation

Code § 18.2-46.1 defines the relevant terms as follows:

> "Criminal street gang" means any ongoing organization, association, or group of three or more persons, whether formal or informal, (i) which has as one of its primary objectives or activities the commission of one or more criminal activities; (ii) which has an identifiable name or identifying sign or symbol; and (iii) whose members individually or collectively have engaged in the commission of, attempt to commit, conspiracy to commit, or solicitation of two or more predicate criminal acts, at least one of which is an act of violence, provided such acts were not part of a common act or transaction.

> "Predicate criminal act" means (i) an act of violence; (ii) any violation of [listing 29 specified sections of the Code of Virginia];(iii) a second or subsequent felony violation of subsection C of § 18.2-248 or of § 18.2-248.1; (iv) any violation of a local ordinance adopted pursuant to § 15.2-1812.2; or (v) any substantially similar offense under the laws of another state or territory of the United States, the District of Columbia, or the United States.

Code § 18.2-46.2 provides, in pertinent part:

> A.  Any person who actively participates in or is a member of a criminal street gang and who knowingly and willfully participates in any predicate criminal act committed for the benefit of, at the direction of, or in association with any criminal street gang shall be guilty of a Class 5 felony. . . .

7

The Commonwealth, therefore, had the burden of proving, beyond a reasonable doubt, that (1) Rushing had committed a "predicate criminal act," (2) that GD existed as an identifiable street gang, (3) that GD was a criminal street gang because its members had committed two or more "predicate criminal acts," at least one of which was a crime of violence, and (4) that Rushing committed his "predicate criminal act" as a member of or active participant with the gang.

Rushing contends that the Commonwealth's evidence was insufficient to prove the latter two of those elements. Specifically, he argues that Deanthony Clark's conviction order should not have been admitted in evidence because it was not shown to be relevant. Rushing points out that there was no evidence that he knew or had any relationship with Clark, and that the conviction order would only have been relevant if it had some tendency to show that Clark was a member of GD when Clark committed his crime.

We agree with Rushing's conclusion. Detective Sales expressed his opinion that Clark was a member of GD. Generally, expert opinion is only admissible in a criminal case if it is based on facts in evidence. Simpson v. Commonwealth, 227 Va. 557, 565, 318 S.E.2d 386, 391 (1984). The only factual basis Sales had for that opinion was that he had once seen Clark, on an unspecified date, sitting in a chair in a school office,

8

wearing black and blue beads. Because Sales also considered such beads to be GD insignia, he concluded that Clark was a GD member. Proof that GD members wear black and blue beads does not constitute proof that all who wear black and blue beads are GD members.[2]

Further, because Sales' observation of Clark's beads was not related in time to Clark's commission of his crime in Norfolk, it does not support the conclusion that he committed it as a member of the gang. Participation in the gang's activities, without more, is not sufficient to characterize an actor as a gang member in one of the two offenses prerequisite to proof of a criminal street gang's existence. A defendant charged with gang participation, although not an actual member of the gang, may be convicted upon a showing that he participated in a gang-related crime. The statute, however,

---

[2] The Commonwealth's reasoning illustrates the celebrated fallacy of the undistributed middle term in Aristotelian Logic. In the syllogism: "All gang members wear beads; Clark wears beads; therefore Clark is a gang member," the conclusion is fallacious because it does not account for those who wear beads who are not gang members. Some may wear them because they wish to become or be perceived as members, or for protection from members, or because they are enemies or even law enforcement officers seeking to infiltrate the gang, or because they simply like beads. See Spencer v. Texas, 385 U.S. 554, 578-79 (1967) (Warren, C.J., dissenting) (citing Stebbing, A Modern Introduction to Logic 88 (6th ed. 1949)); Allied Erecting & Dismantling Co. v. USX Corp., 249 F.2d 191, 202 n.1 (3d Cir. 2001) (citing Rugero Aldisert, Logic For Lawyers (1997)).

requires membership in the case of those who committed the two unrelated crimes necessary to establish the existence of a criminal street gang.

We do not agree with Rushing's contention that proof of a personal connection between Rushing and Clark was necessary to make Clark's conviction relevant. The last sentence of Code § 18.2-46.1 demonstrates a clear legislative intent to include within the sweep of the statute predicate crimes committed by gang members anywhere within the United States. Nevertheless, Detective Sales' opinion of Clark's gang membership was insufficiently grounded on facts in evidence to carry the Commonwealth's burden of proving one of the two requisite predicate crimes by gang members.[3]

Rushing also contends that the circuit court erred in admitting a photograph of his making what was described by Detective Sales as a GD hand signal. The photographer did not testify, nor did any other witness identify or authenticate the photograph, describe the circumstances existing when it was taken, or testify that it fairly represented the scene it appeared to portray. The circuit court therefore erred in admitting it into evidence without any foundation. See Charles

---

[3] By contrast, Lollis' conviction was relevant because he admitted GD gang membership in his stipulation and plea agreement.

10

E. Friend, The Law of Evidence in Virginia § 13-12(a) at 538 (6th ed. 2003). See Virginia Rule of Evidence 2:901 (enacted by 2012 Acts chs. 688, 708 (requiring "evidence sufficient to support a finding that the thing in question is what its proponent claims").

As stated above, the Court of Appeals declined to address errors in the admission of evidence because Rushing had, in his assignment of error, described the improper admission of the photograph, along with the Clark and Lollis conviction orders, as the basis for his contention that, without them, the evidence was insufficient to support the conviction. It is certainly better appellate practice to put the appellant's finger on the precise error complained of by assigning errors separately when both evidentiary error and sufficiency questions are appealed.

We do not, however agree with the Court of Appeals' holding that review of an evidentiary error is precluded by giving it as the reason the evidence was insufficient. Put differently, an appellant may properly contend (1) that evidence was entered erroneously and (2) without that error the record would not contain evidence sufficient to support the conviction. An appellate court, in those circumstances, cannot adjudicate the question of sufficiency without first deciding whether the evidence should have been admitted. If the evidence is determined to have been admitted in error, and the error has

11

been properly preserved and is non-constitutional, and if there remains evidence in the record clearly sufficient to support the conviction without the evidence erroneously admitted, then the error is harmless and the judgment may be affirmed. If the appellate court is in doubt as to the extent to which the erroneously admitted evidence may have affected the verdict, the appellant is entitled to a reversal and a remand for a new trial. But if there remains in the record, without the erroneously admitted evidence, insufficient evidence to support the conviction, the appellate court must reverse and enter final judgment for the appellant.

The Court of Appeals cited <u>Lockhart v. Nelson</u>, 488 U.S. 33 (1988), for the proposition that, on appellate review for sufficiency of the evidence, all evidence in the record, whether erroneously admitted or not, is to be considered. We have adopted a different standard of appellate review in Virginia.[4] In <u>Crawford v. Commonwealth</u>, 281 Va. 84, 111-12, 704 S.E.2d 107, 123-24 (2011), we held that, on appellate review of the sufficiency of the evidence, "an appellate court may <u>not</u> consider evidence illegally admitted at trial. To hold otherwise would circumvent on appeal the Constitutional

_____

[4] The only issues before us in this appeal involve questions of the interpretation of Virginia statutes, Virginia appellate procedure, and Virginia's rules of evidence.

protections provided to a defendant at trial." (Emphasis added.) We adhere to that standard and the Court of Appeals was bound by Crawford.[5]

Applying that standard, we hold that if the record is considered without the erroneously admitted evidence of Deanthony Clark's conviction, the Commonwealth proved only one predicate crime committed by a gang member rather than the two required by the statute. Therefore, the Commonwealth failed to prove an essential element of the crime and the Court of Appeals erred in affirming Rushing's conviction for gang participation. Because this holding requires reversal and final judgment for Rushing, we do not reach the effect of the erroneous admission of the photograph.[6]

   B.   Use of a Firearm in Commission of Burglary

The Commonwealth concedes on brief that, in light of this Court's decision in Rowland v. Commonwealth, 281 Va. 396, 402,

_____

   [5] Here, as in Crawford, we are concerned with the rules of appellate review in Virginia. The Supreme Court of the United States, in Lockhart, in a federal habeas corpus appeal, considered whether the Double Jeopardy Clause barred a resentencing proceeding after evidence used to support an enhanced penalty was found to have been improperly admitted. If the Commonwealth should seek to retry Rushing, a double jeopardy question may arise, but that question is not before us in this appeal.

   [6] It is thus unnecessary to decide whether that error was harmless in light of other evidence from which the jury might have concluded that Rushing committed his crimes in participation with the gang.

13

707 S.E.2d 331, 334 (2011) (use of a firearm in commission of burglary requires proof that the firearm was used before entry was fully accomplished), the evidence was insufficient to support that conviction. Accordingly, we will reverse the conviction on that charge, and enter final judgment dismissing that charge.

## Conclusion

For the reasons stated, we will reverse and dismiss Rushing's convictions for gang participation and for use of a firearm in the commission of burglary, entering final judgment here. Rushing's other convictions are unaffected by this appeal.

<u>Reversed and final judgment</u>.