COURT OF APPEALS OF VIRGINIA

Present:   Judges Humphreys, Kelsey and Beales
Argued at Richmond, Virginia


CLIFFORD EDWARD SEXTON

                                              MEMORANDUM OPINION[*] BY
v.      Record No. 0352-12-2                  JUDGE RANDOLPH A. BEALES
                                                    APRIL 16, 2013

COMMONWEALTH OF VIRGINIA



            FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
                       Frederick G. Rockwell, III, Judge

          Ryan T. Spetz (Gordon, Dodson, Gordon & Rowlett, on briefs), for
          appellant.

          Robert H. Anderson, III, Senior Assistant Attorney General
          (Kenneth T. Cuccinelli, II, Attorney General, on brief), for appellee.


       Clifford Edward Sexton (appellant) was convicted in a bench trial before the Circuit

Court of Chesterfield County of construction fraud in violation of Code § 18.2-200.1.[1]

Appellant argues on appeal that the trial court erred by (1) not applying all of the necessary

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Code § 18.2-200.1 reads in pertinent part:

          If any person obtain from another an advance of money,
          merchandise or other thing, of value, with fraudulent intent, upon a
          promise to perform construction, removal, repair or improvement
          of any building or structure permanently annexed to real property,
          or any other improvements to such real property . . . and fail or
          refuse to perform such promise, and also fail to substantially make
          good such advance, he shall be deemed guilty of the larceny of
          such money, merchandise or other thing if he fails to return such
          advance within fifteen days of a request to do so sent by certified
          mail, return receipt requested, to his last known address or to the
          address listed in the contract.

elements of Code § 18.2-200.1 when it found appellant guilty of violating Code § 18.2-200.1, and by (2) holding the evidence sufficient to find appellant guilty of violating Code § 18.2-200.1. We find that appellant's first assignment of error is waived on appeal under Rule 5A:18 and that his second assignment of error, as stated, is inadequate under Rule 5A:12(c)(1)(ii).  Accordingly, we affirm in part and dismiss in part.

## I.  BACKGROUND

On September 23, 2010, William R. Patterson, who resided in Chester, Virginia, entered into a contract with appellant's company, Hall-Sexton General Contracting, to make repairs to the exterior of his home.  Patterson dealt solely with appellant with regard to the repairs.  The contract, which both Patterson and appellant signed, recited that the work would begin on the following day, September 24, 2010, and would be completed by October 14, 2010.  The contract called for Patterson to make a deposit of 50%, and the remaining 50% would be paid when the work was completed.  The contract also required Patterson to supply all of the materials for the work.  On September 23, 2010 Patterson gave appellant a check in the amount of $2,070 as an advance, which appellant then cashed.  On that same day, Patterson and appellant also signed a one-page document entitled "Agreement."  That document also recited a start date of September 24, 2010, and a finish date of October 14, 2010, and noted that Patterson had given appellant the check for the advance in the amount of $2,070.

Even though the contract and agreement stated that appellant would begin his work on the very next day, September 24, 2010, Patterson testified that "no one showed up" at that time. Patterson had already paid appellant the advance and provided the materials for the project, as the contract required.  However, appellant did not fulfill any of his obligations under the contract.

Patterson called appellant on the phone the afternoon of September 24, 2010 after "no one showed up" to begin work on the start date. Patterson testified that during that phone call, appellant told him that "the crew that he was using was running behind on a project that they were working on, and that [they] would reschedule the work for the following week." Appellant told Patterson that he would inform him when he would be able to start the repairs. Appellant subsequently did not call Patterson to tell him when the project would begin. At some point between Tuesday and Thursday of the following week, Patterson left appellant a message expressing his concern about the delay in starting the work. Patterson testified that he was "beginning to get worried because of the water restriction coming up" as a county mandatory restriction on using water would likely be imposed when appellant still needed to "power wash the house before [he could] do any of the other work." Appellant later called Patterson back, but the work still did not begin.

Patterson explained that, when he attempted to call appellant, it usually took "three to six days between the time I initiated communication until I got some sort of response back." Patterson testified that appellant gave him an explanation for the delays *once*. Patterson testified that on that occasion, appellant explained to him that "he was having the loss of some personnel that would adversely impact his ability to do things, and that he would get with me and set a date for the work to be done."

Patterson testified that after that, appellant's "telephone calls were sketchy, so [Patterson] started using email as communication." Patterson said that several times appellant responded to his emails with "commitments . . . to start the work, and then [appellant] would miss his target." For example, Patterson stated that he received an email from appellant on a Tuesday, in which appellant said that he would start work "the next Wednesday." Patterson testified that he construed appellant's response to indicate that he would be at his home the following day, but

appellant did not show up on that day or the Wednesday of the following week. Patterson noted that there was "no communication" from appellant, "[s]o [he] [s]ent another email, and this kept going on and on and on." Patterson testified at trial that "at least 95 percent of the time I was the one who initiated the conversations or attempted conversations."

After appellant repeatedly promised to start the repairs, work had not even begun on the project by the date that the contract called for the project to be completed – October 14, 2010. Patterson filed a complaint with the Better Business Bureau and on November 15, 2010, sent a certified registered letter to the address for appellant's contracting company, which was returned unclaimed. In that letter, Patterson requested that appellant return the advanced payment of $2,070, for failure to undertake the agreed-upon repairs. Appellant had closed his business two days prior to the certified letter being sent and testified that he was unaware of Patterson's certified letter until December. As of the time of the trial on October 17, 2011, appellant had not returned Patterson's money or started the repairs.

Patterson testified that he had spoken with appellant prior to Christmas in December of 2010, and appellant indicated *for the first time* that he was having "problems with his business [and] was going to close down" and that he needed additional time to pay back the money. Patterson testified that he agreed to give him "some time to make arrangements." Patterson spoke with the Better Business Bureau, and its representatives talked with appellant. However, appellant never returned Patterson's money.

Appellant admitted at trial that he had financial problems as far back as 2008 and "was having trouble staying afloat." Specifically, appellant testified:

> So as things got leaner, leaner and leaner, you were doing work for less and less and less, so your profit was less, but your bills were still the same. Because I was so much in the red, I was - I was doing what a lot of people don't like to do. *I was robbing from Peter to pay Paul.* And I was doing that, and successfully, I was looking like I was going to get out of it, and then it turned on me

- 4 -

again, and I just - I couldn't. I had robbed everything from my
family, my wife's 401K, my savings, it all just went.

(Emphasis added). Appellant further admitted at trial that he "didn't spend a nickel on this

project" and that he had not told Patterson at the time they signed their contract that he was

having any financial problems. Appellant even acknowledged that he did not pay anyone to do

any work on Patterson's house – contrary to the contract and agreement he signed with Patterson.

Appellant explained that the way he saw the 50% advance Patterson paid to him was that "[m]y

profit and overhead was up front, and my labor was at the end." Appellant used Patterson's

advance to pay other bills.

## II. ANALYSIS

### First Assignment of Error: Application of the Elements of Code § 18.2-200.1

In his first assignment of error, appellant argues that the trial court erred in not applying

all of the necessary elements of Code § 18.2-200.1 when it found him guilty of violating Code

§ 18.2-200.1. We find that this assignment of error is waived on appeal under Rule 5A:18

because appellant never raised this issue at trial.

Rule 5A:18 states:

> No ruling of the trial court or the Virginia Workers' Compensation
> Commission will be considered as a basis for reversal unless an
> objection was stated with reasonable certainty at the time of the
> ruling, except for good cause shown or to enable the Court of
> Appeals to attain the ends of justice. A mere statement that the
> judgment or award is contrary to the law and the evidence is not
> sufficient to preserve the issue for appellate review.

Appellant indicates that his first assignment of error was preserved at page 22 of the joint

appendix. However, there is no argument regarding whether the trial court erred in not applying

the necessary elements of Code § 18.2-200.1 on page 22 of the joint appendix – or anywhere in

the transcript from the trial. Rather, the argument on that page of the joint appendix focuses on

*the admissibility* of evidence of prior work that appellant had done for Patterson.

- 5 -

Within the argument section pertaining to his first assignment of error, appellant argues on brief that, in an effort to show that he did not act with fraudulent intent, defense counsel attempted to present evidence of a prior business relationship between Patterson and appellant. The trial judge did not admit this evidence. It appears from the record that appellant made a timely and specific objection to the trial judge's rejection of the evidence, arguing that the trial judge had wrongly held inadmissible the prior business dealings and certain statements by appellant contained in Patterson's certified letter of November 15, 2010 (which included various email communications between him and appellant in the prior weeks).

However, appellant's argument on brief that the trial court erred in not admitting evidence of prior work that appellant had performed for Patterson is not properly before this Court because, although that argument was preserved at trial, it was not included in either of appellant's assignments of error on appeal. Case law makes clear that appellant is bound by the terms of his assignment(s) of error. See Carroll v. Commonwealth, 280 Va. 641, 649, 701 S.E.2d 414, 418 (2010) (holding that the Court of Appeals did not err in finding that it cannot consider an issue that was not encompassed in any of the questions presented in the defendant's petition for appeal).[2]

---

[2] Further, Rushing v. Commonwealth, 284 Va. 270, 726 S.E.2d 333 (2012), does not permit appellate review of appellant's admissibility argument raised within his brief. The Supreme Court stated in Rushing:

> It is certainly better appellate practice to put the appellant's finger on the precise error complained of by assigning error separately when both evidentiary error and sufficiency questions are appealed.

> We do not, however agree with the Court of Appeals' holding that review of an evidentiary error is precluded by giving it as the reason the evidence was insufficient. Put differently, an appellant may properly contend *(1) that evidence was entered erroneously and (2) without that error the record would not contain evidence sufficient to support the conviction.* An appellate court, in those

As for appellant's argument that the trial court misapplied the elements of Code

§ 18.2-200.1, this is the only issue raised in his first assignment of error. However, at no point

during the proceedings before the trial court did the defense raise an objection to the issue

appellant now raises for the first time in his first assignment of error – i.e., that the trial judge

erred in his application of the elements of Code § 18.2-200.1. Thus, appellant has not preserved

this specific argument, as it is raised for the first time on appeal.

> Although Rule 5A:18 allows exceptions for good cause or
> to meet the ends of justice, appellant does not argue that we should
> invoke these exceptions. See e.g., Redman v. Commonwealth, 25
> Va. App. 215, 221, 487 S.E.2d 269, 272 (1997) ("In order to avail
> oneself of the exception, a *defendant must affirmatively show* that a
> miscarriage of justice has occurred, not that a miscarriage might
> have occurred." (emphasis added)). We will not consider, *sua
> sponte*, a "miscarriage of justice" argument under Rule 5A:18.

Edwards v. Commonwealth, 41 Va. App. 752, 761, 589 S.E.2d 444, 448 (2003) (*en banc*).

Accordingly, appellant's first assignment of error is waived on appeal under Rule 5A:18.

### Second Assignment of Error: Sufficiency of the Evidence

In his second assignment of error, appellant argues that "the trial court erred in finding

Sexton guilty of violating Section 18.2-200.1 of the 1950 Code of Virginia, as amended, as the

evidence presented was insufficient to prove guilt beyond a reasonable doubt." The phrasing of

---

circumstances, cannot adjudicate the question of sufficiency
without first deciding whether the evidence should have been
admitted.

Id. at 277-78, 726 S.E.2d at 338 (emphasis added). If appellant had assigned as error *both* that
the trial court erred in refusing to admit his proffered evidence regarding his prior business
dealings *and* that the evidence therefore was insufficient to convict appellant of construction
fraud (the issue raised in appellant's second assignment of error), then, under Rushing, both the
evidentiary and sufficiency issues would be reviewable on appeal. However, that did not occur
here. Instead, appellant never raised the admissibility issue in an assignment of error.

appellant's second assignment of error does not comply with the requirements of Rule

5A:12(c)(1)(ii), which states in pertinent part:

> An assignment of error which does not address the findings or rulings in the trial court or other tribunal from which an appeal is taken, *or which merely states that the judgment or award is contrary to the law and the evidence is not sufficient*. If the assignments of error are insufficient or otherwise fail to comply with the requirements of this Rule, the petition for appeal shall be dismissed.

(Emphasis added). Appellant's second assignment of error merely states that the trial court

wrongly convicted the defendant under Code § 18.2-200.1 "as the evidence presented was

insufficient to prove guilt beyond a reasonable doubt." This assignment of error does not even

hint at the particular way in which the evidence was deficient. Thus, pursuant to the Supreme

Court's holding in Davis v. Commonwealth, 282 Va. 339, 717 S.E.2d 796 (2011), Rule

5A:12(c)(1)(ii) mandates its dismissal in the absence of any motion by appellant here for leave

from this Court to amend this assignment of error. See Whitt v. Commonwealth, ___Va. App.

___, ___, ___ S.E.2d ___, ___ (Mar. 26, 2013) (*en banc*)[3] (holding that Whitt's assignment of

error, which simply stated, "The circuit court judge committed error by not dismissing the

convictions against the appellant based upon insufficient evidence as a matter of law," did not

meet the requirements of Rule 5A:12(c)(1)(ii) -- but also holding that this Court had authority to

grant Whitt's motion for leave to amend the assignment of error so as to comply with Rule

5A:12(c)(1)(ii)).

Here, we have two assignments of error in the case before us – only one of which

requires dismissal. Where we address multiple assignments of error in a case on appeal, we

cannot believe that the Supreme Court intended in the newly revised Rule 5A:12(c)(1)(ii) for us

---

[3] The Court has held this opinion, pending release of this Court's *en banc* opinion in Whitt, which is controlling of the resolution of Assignment of Error II in this appeal.

to dismiss the entire appeal when only one assignment of error fails to comply with Rule 5A:12(c)(1)(ii) – even though all of the other assignments of error in that appeal are properly stated. Therefore, while we are required by <u>Davis</u> and <u>Whitt</u> to dismiss this Assignment of Error II, we do not dismiss the entire appeal.

### III. CONCLUSION

Accordingly, for the foregoing reasons, we affirm the judgment of the trial court as to the issue raised in the first assignment of error and dismiss the appeal on the second assignment of error due to appellant's failure to comply with Rule 5A:12(c)(1)(ii).[4]

<u>Affirmed, in part, and dismissed, in part.</u>

---

[4] We recognize that appellant has the right to move this Court for leave to pursue a delayed appeal with regard to his second assignment of error, pursuant to Code § 19.2-321.1.