Filed 4/2/21  P. v. Powell CA5

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>STEVEN A. POWELL,<br><br>    Defendant and Appellant. | F078778<br><br>(Super. Ct. No. BF169711A)<br><br><br>**ORDER MODIFYING OPINION AND DENYING REHEARING**<br>[CHANGE IN JUDGMENT] |

**THE COURT:**

It is hereby ordered that the nonpublished opinion filed on March 12, 2021, be modified as follows:

1.      On page 2, add the following sentence to the end of the introduction before the sentence, "The judgment is affirmed":

> However, in light of the recent change to the maximum term of probation effected by Assembly Bill No. 1950 (2019-2020 Reg. Sess.) (Assembly Bill 1950) (Stats. 2020, ch. 328, § 2, eff. Jan. 1, 2021), we reduce the term of Powell's probation from three years to two years.

2.       On page 9, add the following section prior to the disposition:

III.  ASSEMBLY BILL 1950

> While this appeal was pending, Assembly Bill 1950 took effect on January 1, 2021.  (Stats. 2020, ch. 328, § 2.)  Assembly Bill 1950 reduced the maximum probation term for most felony offenses to two years. (§ 1203.1, subds. (a), (m).)  Because the reduction in the length of the

probation term has an ameliorative effect, we presume that our Legislature intended to make its effect retroactive to nonfinal convictions in the absence of an express savings clause specifying a contrary intent. (*In re Estrada* (1965) 63 Cal.2d 740, 744–747.) Assembly Bill 1950 contains no such savings clause. Therefore, in accordance with Assembly Bill 1950, the maximum term of Powell's probation as to count 1 is now two years. (Accord, *People v. Sims* (2021) 59 Cal.App.5th 943, 955–964 [reaching same result]; *People v. Quinn* (2021) 59 Cal.App.5th 874, 879–885 [same].) We consequently remand the matter to the trial court to correct the minute order governing the length and terms of probation to reflect a two-year term of formal probation. Should either the People or Powell wish to make further motions regarding the length or terms of probation, each may file the appropriate motion(s) with the trial court.

3. On page 9, the disposition is modified to read as follows:

The term of probation imposed as to count 1 is reduced from three years to two years. The trial court is directed to correct the minute order to reflect the imposition of a two-year term of formal probation, and to notify the Kern County Department of Probation of the change to Powell's probationary term. In all other respects, the judgment is affirmed.

This modification changes the judgment.

Appellant's petition for rehearing filed on March 16, 2021, is hereby denied.

FRANSON, J.

WE CONCUR:

LEVY, Acting P.J.

MEEHAN, J.

2.

Filed 3/12/21  P. v. Powell CA5 (unmodified opinion)

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FIFTH APPELLATE DISTRICT**

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>STEVEN A. POWELL,<br><br>    Defendant and Appellant. | F078778<br><br>(Super. Ct. No. BF169711A)<br><br>**OPINION** |

-ooOoo-

**THE COURT**[*]

APPEAL from a judgment of the Superior Court of Kern County.  Brian M. McNamara, Judge.

Ross Thomas, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, Amanda D. Cary and Lewis A. Martinez, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Levy, Acting P.J., Franson, J. and Meehan, J.

Steven A. Powell was convicted of two counts of felony evading, one count of assault with a deadly weapon on a peace officer, and one misdemeanor count of driving with a suspended license. On appeal, Powell contends one of his felony evading convictions should be stayed because he had the same objective when committing that crime as when committing the felony assault. We disagree. Powell additionally requests that we review the trial court's in camera assessment of peace officer personnel records for error. (See *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*).) We conclude that the trial court did not err in its assessment of the personnel records. The judgment is affirmed.

## STATEMENT OF THE CASE

A jury convicted Powell as charged in count 1 of assault on a peace officer with a deadly weapon (Pen. Code,[1] § 245, subd. (c)); in counts 2 and 3 of felony evading (Veh. Code, § 2800.2); and in count 4, of driving with a suspended license, a misdemeanor (Veh. Code, § 14601.1, subd. (a).) The trial court sentenced Powell on count 1 to formal probation for three years, imposed a one-year jail term, and imposed a five-year prison sentence, with consecutive sentences of eight months each on counts 2 and 3, it suspended execution of the prison sentences, and imposed a concurrent 180-day jail sentence on count 4. The trial court imposed various conditions of probation and various fines and fees. It gave Powell 61 days of custody and work time credits.

## STATEMENT OF THE FACTS

On the evening of August 10, 2016, police officers James Montgomery and Jesse Perez were on patrol in uniform and in a patrol vehicle when they saw two motorcycles weaving in and out of traffic. The officers activated their lights and siren to effectuate a traffic stop. When the motorcycles did not stop, the officers pursued. A records check revealed that both license plate numbers were expired.

---

[1]     All further statutory references are to the Penal Code unless noted otherwise.

The motorcycles continued, failing to stop at a red light. The two motorcycles split up; neither stopped for the red traffic light.

The officers followed one of the motorcycles, registered to Powell. The records check revealed that Powell did not have a valid license. At one point, Officer Perez was travelling in excess of 65 miles per hour in a 35-mile-per-hour zone and was not able to keep up with the motorcycle. After the motorcycle ran another red light, Officer Perez was unable to safely follow and deactivated the lights and siren.

A few minutes later, the officers arrived at an address listed for Powell, where they saw the motorcycle slow down and prepare to turn into the apartment complex. Officer Perez maneuvered his patrol vehicle to prevent the motorcycle from fleeing. The two vehicles were then five to 10 feet apart, "nose to nose." Officer Perez activated the lights on the patrol vehicle. Officer Montgomery got out of the vehicle and ordered Powell to stop. Instead, Powell revved the motorcycle and accelerated quickly enough to lift the front wheel of the motorcycle off the ground and drove directly toward Officer Montgomery, who had to jump back into the vehicle to avoid being hit.

The motorcycle went one direction, U-turned and came back to within 10 feet of the patrol vehicle. Officer Montgomery re-exited the patrol vehicle and ordered Powell to stop. Officer Montgomery tasered Powell, but the taser was ineffective due to Powell's leather vest.

Powell then drove off on the sidewalk, striking a wooden fence, and causing parts of the motorcycle to fall off and Powell to nearly lose control. Returning to the patrol vehicle, the officers again gave chase. The motorcycle was travelling faster than the patrol car and ran a stop sign. Other officers responded but were also not able to stop the motorcycle.

After obtaining a search warrant, the officer searched the apartment listed as Powell's address and found mail and a passport for Powell, as well as a firearm registered to him. Powell was apprehended 18 days later.

3.

At trial, Powell claimed an alibi and mistaken identity.

## DISCUSSION

### I.  SECTION 654

Powell was convicted, inter alia, of assault with a deadly weapon on a peace officer (count 1) and evading a police officer (count 2).  The trial court imposed an eight-month prison term on count 2 and ordered it to run concurrent to the five-year term imposed on count 1.  Execution of the aggregate term was suspended, and Powell placed on probation for a period of three years.  Powell contends the trial court erred when it failed to stay execution of his sentence on count 2 pursuant to section 654 because evading a peace officer was his objective when committing both crimes.  We disagree.

Section 654, subdivision (a) provides, in relevant part: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision."  Under the plain language of the statute, multiple punishments, whether consecutive or concurrent, may not be imposed for a single "act or omission."  (*Ibid.*; *People v. Deloza* (1998) 18 Cal.4th 585, 594.)  Section 654 also prohibits multiple punishments for multiple acts which comprise an "indivisible course of conduct."  (*People v. Hester* (2000) 22 Cal.4th 290, 294.)

A course of conduct is "indivisible" if the defendant acts with "a single intent and objective."  (*In re Jose P.* (2003) 106 Cal.App.4th 458, 469, disapproved on other grounds in *People v. Prunty* (2015) 62 Cal.4th 59, 78, fn. 5.)  "If, on the other hand, [the] defendant harbored 'multiple criminal objectives,' which were independent of and not merely incidental to each other, he may be punished for each statutory violation committed in pursuit of each objective, 'even though the violations shared common acts or were parts of an otherwise indivisible course of conduct.' "  (*People v. Harrison* (1989) 48 Cal.3d 321, 335 (*Harrison*).)  "The question of whether the defendant held

4.

multiple criminal objectives is one of fact for the trial court, and, if supported by any substantial evidence, its finding will be upheld on appeal." (*People v. Herrera* (1999) 70 Cal.App.4th 1456, 1466, overruled on other grounds in *People v. Mesa* (2012) 54 Cal.4th 191, 199.) The court's findings may be either expressed or implied from the court's ruling. (*People v. McCoy* (1992) 9 Cal.App.4th 1578, 1585.)

The fact that "certain acts are proximate in time is not determinate in finding an indivisible course of conduct. Multiple criminal objectives may divide those acts occurring closely together in time." (*People v. Bradley* (1993) 15 Cal.App.4th 1144, 1157, disapproved on another point in *People v. Rayford* (1994) 9 Cal.4th 1, 7, 21.) Thus, as our Supreme Court noted in *People v. Latimer* (1993) 5 Cal.4th 1203 (*Latimer*), "Some [decisions] have narrowly interpreted the length of time the defendant had a specific objective, and thereby found similar but *consecutive* objectives permitting multiple punishment." (*Id.* at pp. 1211–1212.) The court in *Latimer* cited *People v. Trotter* (1992) 7 Cal.App.4th 363 (*Trotter*) as one example. (*Latimer, supra*, at p. 1212.)

In *Trotter*, the defendant was punished separately for two of three gunshots fired at a pursuing officer. On appeal, the court rejected the defendant's claim of a single objective—"to avoid apprehension"—concluding that it was proper to punish him separately for the first two shots, which were fired "within one minute" of each other. (*Trotter, supra,* 7 Cal.App.4th at p. 366.) The court observed: "Defendant's conduct became more egregious with each successive shot. Each shot posed a separate and distinct risk to [the officer] and nearby freeway drivers. To find section 654 applicable to these facts would violate the very purpose for the statute's existence" (*id.* at p. 368), which is " 'to insure that a defendant's punishment will be commensurate with his culpability.' " (*Id.* at p. 367.)

"Furthermore, [*Trotter*] was not a case where only one volitional act gave rise to multiple offenses. Each shot required a separate trigger pull. All three assaults were volitional and calculated and were separated by periods of time during which reflection

5.

was possible.  None was spontaneous or uncontrollable.  'Defendant should ... not be rewarded where, instead of taking advantage of an opportunity to walk away from the victim, he voluntarily resumed his ... assaultive behavior.' " (*Trotter, supra,* 7 Cal.App.4th at p. 368, citing *Harrison, supra,* 48 Cal.3d at p. 338.)  Finally, the court also observed that "even under the long recognized 'intent and objective' test, each shot evinced a separate intent to do violence...." (*Ibid.*)

Recently, the Fourth Appellate District, Division One, concluded that section 654 did not bar multiple punishments for evading a peace officer with reckless driving and assault with a deadly weapon on a peace officer, crimes that occurred during a high-speed car chase with police.  (*People v. Jimenez* (2019) 32 Cal.App.5th 409, 413–415, 426.)  In *Jimenez* the defendant drove into the opposing lane of traffic where a law enforcement vehicle was pursuing him, forcing the pursuing vehicle to "swerve out of the way at the last moment to avoid a head-on collision." (*Id.* at p. 414.)  The court explained defendant "could have driven on his side of the road or moved rather than driving head on toward [the law enforcement] vehicle.  He chose not to do so, aggravating the severity of the situation.  [The defendant's] initial efforts trying to evade the first vehicle, and his subsequent assaultive conduct, 'were volitional and calculated, and were separated by periods of time during which reflection was possible.' " (*Id.* at p. 426.)

" 'The defendant's intent and objective are factual questions for the trial court.' " (*People v. Coleman* (1989) 48 Cal.3d 112, 162.)  Trial courts have broad latitude to determine whether a defendant harbored one or more objectives, and we uphold their findings on appeal if there is any substantial evidence in the record to support them. (*People v. Hutchins* (2001) 90 Cal.App.4th 1308, 1312.)  " 'We review the court's determination of [a defendant's] "separate intents" for sufficient evidence in a light most favorable to the judgment, and presume in support of the court's conclusion the existence

of every fact the trier of fact could reasonably deduce from the evidence.  [Citation.]'
[Citation.]"  (*People v. Andra* (2007) 156 Cal.App.4th 638, 640–641.)

Powell argues he acted with a single criminal intent in count 1, assaulting Officer
Montgomery, and count 2, evading officers.  We disagree.  By the time the officers
encountered Powell at the apartment address, they had lost him for a few minutes,
allowing Powell time to reflect on his further actions.  He also had further time to reflect
when the patrol vehicle stopped in front of the motorcycle and Officer Montgomery got
out of his vehicle.  Rather than stop, Powell chose to rev his engine and speed toward
Officer Montgomery, who had to dive back into the vehicle to avoid being hit.  Powell
then drove a distance, U-turned, and returned near the officer's vehicle, allowing enough
time for Officer Montgomery to draw his taser and again give Powell commands to stop.
Powell instead sped off, which led to a second chase.

Powell had time to reflect, both before committing the assault and after, when he
continued to evade the officers.  These circumstances permit the reasonable inference that
Powell sought to evade the officers pursuing him, which he was able to do, and that after
being spotted again after several minutes and coming to a stop, he sought to harm Officer
Montgomery by revving his engine and driving straight towards him. This was followed
by Powell again taking off, making a U-turn, and again coming to a stop in front of the
officers before again taking off.  Consequently, substantial evidence supports the court's
implied finding that Powell entertained multiple criminal objectives.

Moreover, "at some point the means to achieve an objective may become so
extreme they can no longer be termed 'incidental' and must be considered to express a
different and a more sinister goal than mere successful commission of the original crime.
[¶]  We should not lose sight of the purpose underlying section 654, which is 'to insure
that a defendant's punishment will be commensurate with his culpability.' "  (*People v.
Nguyen* (1988) 204 Cal.App.3d 181, 191.)  For all these reasons, we conclude that the

7.

court did not violate section 654 when it imposed a concurrent term on Powell's assault of a peace officer conviction.

## II.    *PITCHESS* MOTION

Powell requests that we independently review the in camera *Pitchess* proceeding that the trial court conducted.  Respondent does not object to our review.

On April 18, 2018, Powell made a *Pitchess* motion as to Officers Montgomery and Perez.  The City Attorney filed a partial opposition to the *Pitchess* motion, conceding to an in camera review as to records of dishonesty for Officer Perez only.  On May 10, 2018, the trial court conducted an in camera review, and granted discovery in part and denied discovery in part.   The hearing was reported and transcribed and filed under seal.  On August 22, 2019, we received sealed records from the trial court pertaining to this *Pitchess* hearing.  Accompanying those documents was the trial court's confidential ruling, which indicated that the judge who had presided over appellant's *Pitchess* hearing had reviewed the court reporter's transcript of the in camera hearing and the materials supplied by the custodians of records.

" 'A criminal defendant has a limited right to discovery of a peace officer's personnel records.  [Citation.]  Peace officer personnel records are confidential and can only be discovered pursuant to Evidence Code section 1043 and 1045.' " (*People v. Yearwood* (2013) 213 Cal.App.4th 161, 180.)  "A defendant is entitled to discovery of relevant information from the confidential records upon a showing of good cause, which exists 'when the defendant shows both " 'materiality' to the subject matter of the pending litigation and a 'reasonable belief' that the agency has the type of information sought." ' " (*Ibid.*)

When the court finds good cause and conducts an in camera review pursuant to *Pitchess*, it must make a record that will permit future appellate review.  (*People v. Mooc* (2001) 26 Cal.4th 1216, 1229–1230.)  A custodian is not required to present to the trial court any documents that are "clearly irrelevant" to the *Pitchess* motion.  (*Id.* at p.

1229.*)*  However, if the custodian has any doubt, those documents should be presented to the trial court.  (*Ibid.*)  "The custodian should be prepared to state in chambers and for the record what other documents (or category of documents) not presented to the court were included in the complete personnel record, and why those were deemed irrelevant or otherwise nonresponsive to the defendant's *Pitchess* motion."  (*Ibid.*)  A court reporter should memorialize the custodian's statements and any questions asked by the trial court.  (*Ibid.*)

We have reviewed the in camera proceeding.  The trial court complied with the procedural requirements of a *Pitchess* hearing.  A court reporter was present, and the custodians were sworn prior to testifying. (*People v. Yearwood, supra,* 213 Cal.App.4th at p. 180.)

We have reviewed the sealed personnel files.  Based on that review, we conclude the trial court conducted the proper inquiry into the discoverability of information in the detectives' personnel records, made an adequate record for our review, and did not abuse its discretion by finding there was no discoverable information.

## DISPOSITION

The judgment is affirmed.